452 Mass. 199 (2008)                                          199

District Attorney for the Northwestern Dist. *v.* Eastern Hampshire Div. of the Dist. Court Dep't.

DISTRICT ATTORNEY FOR THE NORTHWESTERN DISTRICT *vs.*
EASTERN HAMPSHIRE DIVISION OF THE DISTRICT COURT
DEPARTMENT (and a consolidated case[1]).

Suffolk. April 9, 2008. - August 18, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*District Attorney. Forfeiture Proceeding. Controlled Substances. Statute,*
Construction.

Survey of the development of G. L. c. 94C, § 47, governing the forfeiture of
assets involved in or derived from violations of the Controlled Substances
Act, through legislative amendment [204-206] and judicial interpretation
[206-208].

Money ordered forfeited under G. L. c. 94C, § 47, governing the forfeiture of
assets involved in or derived from violations of the Controlled Substances
Act, is properly directed to the prosecuting district attorney or Attorney
General and the investigating police department, as specified in § 47 (*d*),
even when the forfeiture is sought and obtained in the District Court by
means of a motion brought pursuant to § 47 (*b*); accordingly, two cases
were remanded to the single justice to enter an order vacating the judge's
orders directing that money forfeited under § 47 (*b*) be deposited in the
General Fund as contrary to law. [208-211]

CIVIL ACTIONS commenced in the Supreme Judicial Court for
the county of Suffolk on June 11 and June 15, 2007.

A motion for consolidation was heard by *Spina*, J., and the
cases were reported by. him.

*Judith Ellen Pietras*, Assistant District Attorney, for District
Attorney for the Northwestern District & another.

*Daniel P. Sullivan* (*Brian T. Mulcahy* with him) for Eastern
Hampshire Division of the District Court Department & another.

*Joel B. Bard*, for town of Hadley, was present but did not
argue.

*Jane Davidson Montori*, Assistant District Attorney, for District Attorney for the Hampden District, was present but did not
argue.

---

[1]District Attorney for the Hampden District *vs.* Springfield Division of the
District Court Department.

*Daniel F. Conley*, District Attorney, *John P. Zanini & Janis DiLoreto Noble*, Assistant District Attorneys, for District Attorney for the Suffolk District & others, amici curiae, submitted a brief.

BOTSFORD, J. When a district attorney successfully moves under G. L. c. 94C, § 47 (*b*), to forfeit money connected to an illegal drug transaction, what is the appropriate disposition of the forfeited funds? In two separate cases, a judge in the District Court answered this question by ordering that the money be deposited in the Commonwealth's General Fund, rather than shared between the law enforcement trust funds of the prosecuting district attorney and police department involved in each underlying criminal case. The petitioners here — the district attorney for the northwestern district, the district attorney for the Hampden district, and the police department of the town of Hadley (collectively, petitioners) — petitioned for relief from the judge's two orders. We agree with the petitioners that money ordered forfeited under G. L. c. 94C, § 47, is properly directed to the prosecuting district attorney or Attorney General and the investigating police department, as specified in § 47 (*d*), even when the forfeiture is sought and obtained in the District Court by means of a motion brought pursuant to § 47 (*b*). Accordingly, we vacate the judge's two orders.[2]

1. *Background.* The petitions arise from two criminal prosecutions in the District Court Department, one in the Eastern Hampshire Division and one in the Springfield Division. In each case, the defendant pleaded guilty to (or admitted to facts sufficient to warrant conviction of) drug-related crimes.[3] Also in each case, the Commonwealth filed a motion in the District Court, pursuant to G. L. c. 94C, § 47 (*b*), for forfeiture of money that had been seized from the defendant and that, the

---

[2]We acknowledge the amicus brief submitted in support of the petitioners by the district attorneys for the Suffolk, Essex, Northern, Norfolk, Berkshire, Plymouth, Cape and Islands, Middle, and Bristol districts.

[3]The defendant in the Eastern Hampshire District Court case was charged with distribution of a Class D substance (subsequently amended to possession with intent to distribute a Class D substance), in violation of G. L. c. 94C, § 32C (*a*), and two unrelated civil offenses. The defendant in the Springfield District Court case was charged with possession with intent to distribute a Class D substance, in violation of G. L. c. 94C, § 32C (*a*), and a violation of the school or park zone statute, G. L. c. 94C, § 32J.

Commonwealth alleged, was connected to the drug transactions that were the subjects of the criminal charges.[4] Both motions were allowed (with no apparent opposition by the respective defendants), and in each case the judge ordered the forfeited monies to be distributed to the Commonwealth's General Fund.

General Laws c. 94C, § 47 (§ 47), governs the forfeiture of assets involved in or derived from violations of G. L. c. 94C, the Controlled Substances Act (Act). Section 47 (*a*) provides that "[t]he following property shall be subject to forfeiture to the commonwealth and all property rights therein shall be in the commonwealth . . . ." The section then lists eight separate categories of such property, including controlled substances and drug-manufacturing equipment, as well as conveyances (for example, automobiles, boats, and aircraft), money, and real estate involved in or acquired as a result of illegal narcotics transactions. G. L. c. 94C, § 47 (*a*) (1)-(8).

Section 47 (*b*) provides that certain categories of property subject to forfeiture under § 47 (*a*) "shall, upon motion of the attorney general or district attorney, be declared forfeit by any court having jurisdiction over said property or having final jurisdiction over any related criminal proceeding brought under any provision of this chapter."[5] Section 47 (*b*), however, contains no description of such a forfeiture proceeding. Thus, it contains no procedural guidelines, and, more importantly, it does not specify how the property shall be disposed of, apart from directing that controlled substances declared forfeit shall be destroyed.[6]

Like § 47 (*b*), § 47 (*d*) also provides for the forfeiture of

---

[4]In the Eastern Hampshire District Court case, the Commonwealth, through the district attorney, moved to forfeit $2,080; in the Springfield District Court case, the Commonwealth, through the district attorney, moved to forfeit fifty-seven dollars.

[5]The categories of property that may be the subject of a motion to forfeit under G. L. c. 94C, § 47 (*b*), include every category listed in § 47 (*a*), except "conveyances" described in § 47 (*a*) (3).

[6]Section 47 (*b*) reads as follows:

"Property subject to forfeiture under subparagraphs (1), (2), (4), (5), (6), (7) and (8) of subsection (*a*) shall, upon motion of the attorney general or district attorney, be declared forfeit by any court having jurisdiction over said property or having final jurisdiction over any related criminal proceeding brought under any provision of this chapter. Property subject to forfeiture under subparagraph (1) of subsection (*a*)

certain categories of property listed in § 47 (*a*), albeit fewer than § 47 (*b*).[7] Section 47 (*d*) allows a district attorney or the Attorney General to "petition the superior court in the name of the commonwealth in the nature of a proceeding in rem to order forfeiture." G. L. c. 94C, § 47 (*d*), first par. But unlike § 47 (*b*), § 47 (*d*) contains detailed procedural requirements, provisions for the sale of forfeited conveyances and real estate, and a mandate that "[t]he final order of the court shall provide that said moneys and the proceeds of any such sale shall be distributed equally between the prosecuting district attorney or attorney general and the city, town or state police department involved in the seizure." G. L. c. 94C, § 47 (*d*), first & second pars. Section 47 (*d*) then establishes law enforcement trust funds

---

shall be destroyed, regardless of the final disposition of such related criminal proceeding, if any, unless the court for good cause shown orders otherwise." G. L. c. 94C, § 47 (*b*).

[7]Property subject to forfeiture under § 47 (*d*) includes conveyances, money (and other things of value), and real property, as described in § 47 (*a*) (3), (5), and (7). The first two paragraphs of § 47 (*d*) read in relevant part as follows:

"A district attorney or the attorney general may petition the superior court in the name of the commonwealth in the nature of a proceeding in rem to order forfeiture of a conveyance, real property, moneys or other things of value subject to forfeiture under the provisions of subparagraphs (3), (5), and (7) of subsection (*a*). Such petition shall be filed in the court having jurisdiction over said conveyance, real property, monies or other things of value or having final jurisdiction over any related criminal proceeding brought under any provision of this chapter. . . . In all such suits where a final order results in a forfeiture, said final order shall provide for disposition of said conveyance, real property, moneys or any other thing of value by the commonwealth or any subdivision thereof in any manner not prohibited by law, including official use by an authorized law enforcement or other public agency, or sale at public auction or by competitive bidding. The proceeds of any such sale shall be used to pay the reasonable expenses of the forfeiture proceedings, seizure, storage, maintenance of custody, advertising, and notice, and the balance thereof shall be distributed as further provided in this section.

"The final order of the court shall provide that said moneys and the proceeds of any such sale shall be distributed equally between the prosecuting district attorney or attorney general and the city, town or state police department involved in the seizure. If more than one department was substantially involved in the seizure, the court having jurisdiction over the forfeiture proceeding shall distribute the fifty percent equitably among these departments."

to receive these monies for each prosecutorial agency and police department and describes the purposes for which they may be expended. G. L. c. 94C, § 47 (*d*), third & fourth pars.

In denying the district attorneys' respective requests to deposit the forfeited money in the law enforcement trust funds described in § 47 (*d*), the judge reasoned that the Superior Court alone, in an in rem proceeding brought under § 47 (*d*), had authority to direct forfeited funds to the prosecutor and police. He concluded that the District Court, which only has jurisdiction to consider a motion for forfeiture brought under § 47 (*b*), must look to § 47 (*a*) to determine disposition of forfeiture proceeds. He further stated that § 47 (*a*)'s declaration that enumerated property "shall be subject to forfeiture *to the commonwealth* and all property rights therein shall be *in the commonwealth*" (emphasis by judge) indicated that all forfeited money must be directed to the General Fund.[8] According to the judge, when the Legislature amended § 47 in 1984 to allow the prosecutor and police to retain forfeited funds, it deliberately made that financial benefit available only in a separate, procedurally enhanced in rem action so as to "make certain [that] plea discussions would not involve law enforcement agencies receiving forfeited funds as a part of a sentencing agreement" and to "avoid even the appearance of impropriety, conflict of interest or a quid pro quo of asset surrenders for favorable prosecution recommendations." He therefore ordered that the monies forfeited by motion brought under § 47 (*b*), as part of the criminal prosecutions in the underlying cases, be deposited in the Commonwealth's General Fund.

The petitioners filed petitions for relief under G. L. c. 211, § 3, in the county court, seeking orders to have the forfeited funds distributed not to the General Fund but instead to the law enforcement trust funds of the prosecutors and police departments involved in the two cases; the petitions respectively named as respondents the Eastern Hampshire District Court and the Springfield District Court (collectively, respondents).[9] A single

---

[8]The judge also concluded that § 47 (*d*)'s mention of a "final order of the court" that shall provide for division of proceeds between the prosecutor and the police refers only to an in rem judgment of the Superior Court as described earlier in § 47 (*d*), and not to a ruling on a motion.

[9]The respondents concede that the issue raised by the petition is likely to

justice of this court allowed a motion of the respondents to consolidate the two petitions, and reserved and reported them to the full court.

2. *Discussion.* A survey of the relevant development of § 47 through legislative amendment and judicial interpretation informs our analysis of the statute.

In 1971, the Legislature enacted the Act, and included § 47 as part of the new statutory scheme. St. 1971, c. 1071, § 1. As originally enacted, § 47 (*a*) provided for forfeiture of four categories of property: (1) controlled substances; (2) "materials, products and equipment . . . used . . . in manufacturing, compounding, processing, delivering, dispensing, distributing, importing or exporting" controlled substances in violation of the Act; (3) conveyances used to transport or otherwise facilitate illegal traffic in controlled substances; and (4) "books, records and research" used in violation of the Act. *Id.* Under § 47 (*b*), items described in the first, second, and fourth categories of § 47 (*a*) could be declared forfeit by any court with jurisdiction over the property or over a related criminal proceeding. *Id.* Items in the third category of § 47 (*a*) — conveyances — could only be declared forfeit under § 47 (*d*), by the Superior Court in an in rem proceeding involving procedural protections such as notice, hearing, and an appealable final order. *Id.* Section 47 (*d*) provided that the balance of proceeds from any sale of a forfeited conveyance, after payment of the expenses of the forfeiture proceeding and sale, "shall be deposited in the treasury of the commonwealth." *Id.*

Although the legislative history of the Act fails to shed definitive light on the rationale underlying this bifurcation of forfeiture procedures, it seems reasonable to infer that § 47 (*b*) and (*d*) was originally formulated to fit the different characteristics of property forfeitable. It would make sense to enable illegal narcotics and the equipment and documentation necessary for manufacturing and distributing illegal narcotics to be declared forfeit as part of the disposition of the related criminal prosecution, in which they were likely to be used as evidence. No provision for distribution of the proceeds of such forfeitures was

recur, and they accordingly do not object to the exercise of our superintendence powers under G. L. c. 211, § 3.

necessary, because illegal drugs were to be destroyed, and any associated equipment and documentation were not items that would likely produce revenue through sale. Forfeiture of vehicles and other conveyances, by contrast, might reasonably be considered to require the enhanced procedures outlined in § 47 (*d*), because the owner of the vehicle might in fact be someone other than the criminal defendant, and in any event, whether a vehicle was connected to the illegal drug transactions of its owner may be subject to legitimate dispute.[10] Additionally, § 47 (*d*) specifically provided for disposition of forfeited conveyances or the proceeds of their sales because vehicles, unlike narcotics and associated equipment, had resale value for the Commonwealth.

However, while this rationale may explain the original separation of forfeiture proceedings in § 47 (*b*) and (*d*), subsequent amendments to § 47 soon inserted additional categories of property to the list of items that could be forfeited under § 47 (*b*), without ever adding any dispositional provisions to § 47 (*b*). Thus, in 1977, the Legislature amended § 47 to add monies involved in or derived from narcotics transactions to the list of property subject to forfeiture under § 47 (*a*), St. 1977, c. 556, § 1, and added reference to such monies to *both* § 47 (*b*) and § 47 (*d*).[11] See St. 1977, c. 556, §§ 2-3. Since 1977, then, § 47 (*b*) has allowed for forfeiture of property (money) having undoubted value to the Commonwealth, without making specific provision for its disposition. G. L. c. 94C, § 47 (*b*), as amended by St. 1977, c. 556, § 2.[12]

The amendment primarily at issue in this case was passed in

---

[10]Indeed, the Legislature indicated its concern with these very possibilities by providing, in § 47 (*c*) (1)-(3), for various exceptions to the forfeiture of conveyances if the owner of the vehicle was not aware of or involved in its use for transporting narcotics. G. L. c. 94C, § 47 (*c*), inserted by St. 1971, c. 1071, § 1.

[11]A 1977 letter from the then first assistant attorney general to the secretary and counsel for the House Committee on Ways and Means in support of the bill that became this amendment suggests that the Attorney General and the district attorneys were at that time reading the dispositional provisions in § 47 (*d*) as governing § 47 (*b*) forfeitures as well.

[12]Further expansion of the scope of § 47 (*b*) took place over the following years. In 1981, the Legislature added drug paraphernalia to § 47 (*a*), St. 1981, c. 669, § 3, and the following year it made the new category forfeitable

1984. See St. 1984, c. 486, § 2. It deleted the sentence in § 47 (*d*) providing for the balance of any forfeiture proceeds to be deposited in the treasury of the Commonwealth, and replaced it with an instruction that the proceeds should be divided equally between the prosecuting district attorney or Attorney General and the police department involved in the case, to be expended for law enforcement purposes. *Id.*

In 1986, this court considered a challenge to a forfeiture of money ordered pursuant to § 47 (*b*) as part of the criminal proceedings on the related indictments charging violation of the narcotics laws. *Commonwealth* v. *Goldman*, 398 Mass. 201, 201-202 (1986) (*Goldman*). The defendant in *Goldman* argued that forfeiture could not be effected as part of the criminal proceedings themselves, and that the Commonwealth was required to bring a separate proceeding under § 47 (*d*). *Id.* at 202. The court concluded that "the provision in § 47 (*b*) for the forfeiture of property on order of a judge has independent significance and permits a judge to enter a judgment of forfeiture without the Commonwealth first filing a petition under § 47 (*d*)." *Id.* However, the court also held that "[f]undamental due process considerations entitle the defendant to a hearing on the question of the connection, if any, between his illegal drug operations and the funds seized," and directed that the § 47 (*b*) proceeding should adhere to the provisions of § 47 (*d*) regarding burden of proof, conclusions of law, and issuance of a final order. *Id.* at 204 & n.5. The court thus imported some of the

---

under § 47 (*b*). St. 1982, c. 650, § 17. As part of the 1984 amendment (see *infra*), the Legislature added real estate used in furtherance of illegal drug activity to the list of property subject to forfeiture under § 47 (*a*). G. L. c. 94C, § 47 (*a*) (6A), as amended through St. 1984, c. 486, § 1. However, the Legislature did not at that time add reference to this new category of property to either § 47 (*b*) or § 47 (*d*), leaving it unclear what procedure, if any, could be invoked to declare real estate forfeit under § 47. Subsequently, in 1989, the Legislature expanded the category of forfeitable monies under § 47 (*a*) (5) to include real estate and other things of value purchased with proceeds traceable to an illegal narcotics transaction, St. 1989, c. 653, § 74, and added real estate to both § 47 (*b*) and § 47 (*d*). *Id.* at §§ 76, 79. Also in 1989, the Legislature added property used as a container for drugs to § 47 (*a*) and made this category forfeitable under § 47 (*b*). St. 1989, c. 653, §§ 75, 76. At no point in the gradual accretion of § 47 (*b*)'s coverage has the Legislature added any dispositional provisions to § 47 (*b*).

procedural protections of § 47 (*d*) to account for the fact that § 47 (*b*) now covered property — cash — in which a defendant might have a legitimate interest unrelated to illegal narcotics activity.

In *Commonwealth* v. *Brown*, 426 Mass. 475 (1998) (*Brown*), this court again considered a challenge to an order forfeiting money under § 47 (*b*) as part of a related criminal prosecution.[13] The court reaffirmed the holding of *Goldman*, *supra*, that "[a]lthough the Commonwealth initiated the proceeding by forfeiture motion filed pursuant to G. L. c. 94C, § 47 (*b*), the applicable standards of proof are set forth in G. L. c. 94C, § 47 (*d*)." *Brown*, *supra* at 477 n.3. However, while the court in *Brown* agreed with the defendant that he was entitled to notice in advance of the hearing on a forfeiture motion, it declined to import the "more onerous notice requirements" of § 47 (*d*), *id.* at 480 n.5, and, characterizing the forfeiture proceeding under § 47 (*b*) as itself a "civil proceeding in rem," *id.* at 483, applied instead the notice requirements applicable by rule to motions filed in other civil proceedings. *Id.* at 480 & n.5. What *Goldman* and *Brown* thus establish is that forfeiture proceedings brought pursuant to motions under subsection (*b*) of § 47 are civil in nature and must provide certain procedural protections to the defendant, and that we look to § 47 (*d*) for many, but not all, of the applicable protective procedures.[14]

In sum, the Legislature has amended § 47 over time to expand what can be forfeited under § 47 (*b*) without any addition of dispositional language, while at the same time changing, with great specificity, the dispositional provisions in § 47 (*d*). Mean-

[13]The criminal prosecution at issue in *Commonwealth* v. *Brown*, 426 Mass. 475 (1998) (*Brown*), took place in the Boston Municipal Court.

[14]The opinion in *Brown* indicates in a footnote, without comment, that the judge's order in that case distributed the forfeited $142 "in equal shares to the Boston police department and the office of the district attorney for Suffolk County, as provided in G. L. c. 94C, § 47 (*d*)." *Brown*, 426 Mass. at 477 n.2. The petitioners cite this footnote in arguing that distribution of the proceeds of a § 47 (*b*) forfeiture according to the provisions of § 47 (*d*) is approved by this court. The respondents, however, correctly point out that distribution of the proceeds was not at issue in *Brown* and that the court's recitation of the facts of that case does not necessarily indicate approval, and does not constitute binding precedent.

while, this court's opinions have held that forfeiture can certainly be ordered under § 47 (*b*), independently of § 47 (*d*), but have generally not dealt with the question of disposition. It is against this background that we consider the arguments made by the parties.

The petitioners argue that because this court's decisions in *Goldman* and *Brown*, *supra*, have grafted the procedural provisions of § 47 (*d*) (including the requirement of a "final order" deemed important by the District Court judge, see note 8, *supra*), onto § 47 (*b*) motion proceedings, we should also import the distributional provisions of § 47 (*d*) to govern § 47 (*b*) forfeitures. However, the court in *Brown*, in permitting more relaxed notice procedures under § 47 (*b*), explicitly declined to incorporate all of § 47 (*d*)'s procedural provisions directly into § 47 (*b*). *Brown*, 426 Mass. at 480 n.5. Moreover, the reasons that require the importation of some § 47 (*d*) procedures into § 47 (*b*) — namely, to provide due process protections in relation to assets in which a defendant in the criminal case could plausibly have a legitimate property interest — do not justify the importation of its distributional provisions as well. How the Commonwealth disposes of such assets once they have been declared forfeit in a proper proceeding has no bearing on the rights of the former owner; the logic of *Goldman* and *Brown* does not extend to § 47 (*d*)'s provisions regarding distribution of forfeited property.

However, the interpretation of the statute adopted by the judge and advanced here by the respondents is itself not convincing. As has been noted, the 1984 amendment to § 47 added the provision to § 47 (*d*) directing that forfeited monies or the proceeds from the sale of other forfeited property be divided between the prosecutor and the police department involved in the case. St. 1984, c. 486, § 2. The judge determined that the Legislature specifically intended to separate criminal prosecutions from related forfeiture proceedings in which the prosecutor stood to benefit financially in order to avoid unseemly conflict of interest issues on the part of the prosecutor. Our review of the available legislative history of this amendment reveals nothing that might serve as evidence of the intention the judge ascribed to the Legislature. Indeed, it seems equally plausible that

the Legislature amended § 47 (*d*) without amending § 47 (*b*) because only § 47 (*d*) contained the provision targeted for replacement, namely, the sentence directing proceeds to the State treasury.[15] As for textual analysis, the judge's interpretation rests on the view that § 47 (*a*) is the key provision and that the language "all property rights [in forfeited items] shall be in the commonwealth" indicates that forfeited property must be deposited in the General Fund. This construction misreads § 47 (*a*). Tracking, or at least analogous to, its Federal counterpart,[16] § 47 (*a*) simply identifies the types of property that are subject to forfeiture; it says nothing with regard to disposition. Indeed, the interpretation urged by the judge and the respondents makes little sense, because it is difficult to see how many of the categories of forfeitable property listed under § 47 (*a*), such as, for example, drug-manufacturing equipment and records, or real estate, could have any relationship to the General Fund.[17]

---

[15]The respondents also assert that apart from legislative intent, public policy dictates that a prosecutor be required to bring a separate civil action to forfeit funds seized as part of an illegal drug transaction in order to eliminate the potential for prosecutorial conflict of interest in connection with plea negotiations over disposition of criminal charges. The argument falls flat. There is nothing to prevent a prosecutor from negotiating a plea for a criminal charge based on a defendant's willingness not to contest a separate civil proceeding in the Superior Court to forfeit any monies or other property at issue. Nothing, in terms of bargaining positions or interests, would be changed by requiring the prosecutor to bring a separate proceeding in the Superior Court in order to effectuate forfeiture. The respondents' view of the situation elevates appearances over substance.

[16]See 21 U.S.C. § 881(a) (2000), which unlike our version contains headings, and which designates § 881(a) "[s]ubject property." See also *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. 369, 373 (1994), and cases cited ("Because our statute tracks the Federal statute, we have looked to the Federal . . . law for guidance in interpreting our forfeiture statute").

[17]We also disagree with the judge's assertion that, if § 47 (*d*) did apply to the proceedings before him, he could nevertheless order the money deposited in the General Fund on the basis of the language in § 47 (*d*), first par., reading, "said final order shall provide for disposition of said conveyance, real property, moneys or any other thing of value by the commonwealth or any subdivision thereof in any manner not prohibited by law, including official use by an authorized law enforcement or other public agency, or sale at public auction or by competitive bidding." This sentence describes how forfeited items may be either used directly or converted to cash by sale. It does not render optional the subsequent provision that "the court *shall* provide that

We are confronted, then, in § 47 (*b*), with a statute that over time has been amended to authorize a court to order a wide variety of property forfeited to the Commonwealth but, from the time of its original enactment, has never provided any direction as to the disposition of that property (with the exception of illegal narcotics). As already explained, it appears that the absence of any distributional provision in § 47 (*b*) may be an artifact of its original use solely for forfeiture of items that were likely to have no monetary value to the Commonwealth. Likewise, the Legislature's placement of the provision directing funds to the prosecutor and police only in § 47 (*d*) may reflect the fact that, because the only dispositional provisions in the statute were in § 47 (*d*), all changes to disposition have been changes to § 47 (*d*). In the absence of any indication that the Legislature intended different treatment of assets forfeited under § 47 (*b*) once it had been expanded to encompass items with residual value, we conclude that the Legislature intended that all assets forfeited pursuant to § 47 would be distributed according to the provisions outlined in § 47 (*d*).[18]

Wherever possible, "statutes should be interpreted as a whole to constitute a consistent and harmonious provision." *Kargman* v. *Commissioner of Revenue*, 389 Mass. 784, 788 (1983). "[I]t is our task to construe the statute in such a way as to make it an effective piece of legislation, . . . and in that connection every phrase should be given some effect" (citations omitted). *Commonwealth* v. *Mercy Hosp.*, 364 Mass. 515, 521 (1974). In this case, the sensible reading, as the legislative history and this court's prior decisions seem to support, is that § 47 (*d*) supplies the dispositional provisions for forfeitures under § 47, regardless whether the forfeiture is effected pursuant to § 47 (*d*) or § 47 (*b*).[19] The cases are remanded to the single justice to enter

said moneys and the proceeds of any such sale shall be distributed equally between" the prosecutor and police (emphasis supplied). G. L. c. 94C, § 47 (*d*), second par.

[18]To the extent that it permits any surmise, the available legislative history of the 1971 Act appears to support the conclusion that the Legislature viewed the procedural and dispositional provisions in § 47 (*d*) as applicable to any category of forfeitable property for which they might be necessary.

[19]See *Mazzone* v. *Attorney Gen.*, 432 Mass. 515, 523 (2000) ("General Laws c. 94C, § 47, currently governs the forfeiture of conveyances, real

an order vacating the judge's orders directing that money forfeited under § 47 (*b*) be deposited in the General Fund as contrary to law.

*So ordered.*

---

property, monies, and other things of value used in or obtained from the commission of crimes under G. L. c. 94C[]. Section 47 (*d*) specifies that all assets obtained under that section be deposited into special law enforcement trust funds to be used by district attorneys, police departments, and the Attorney General for drug enforcement, education, and rehabilitation purposes").