Terry **BRANNON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 10–CM–1109.

District of Columbia Court of Appeals.

Submitted May 26, 2011.

Decided May 17, 2012.

George E. Rickman, Washington, appointed by the court, was on the brief, for appellant.

Ronald C. Machen, Jr., United States Attorney, and Roy W. McLeese III, Chrisellen R. Kolb, E. Michael Abler, and John P. Fucetola, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY, Associate Judge, RUIZ,* Associate Judge, Retired, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Following a bench trial, appellant Terry Brannon was convicted of two counts of assaulting a police officer ("APO"),[1] one count of maliciously destroying property[2] and one count of failing to comply with a lawful order.[3] On appeal, appellant contends that his APO charges merge as one continuous course of assaultive conduct and he challenges his destruction of property conviction, claiming he acted under adequate provocation. We affirm.

**I.**

On the evening of May 11, 2010, appellant was pulled over for speeding by an unmarked police vehicle containing Metropolitan Police Department ("MPD") Officers David Jackson, Walter Pankowski and John Thurman. After pulling over, appellant exited his vehicle and provided Officer Jackson with a license and registration. Thereafter, appellant began walking away to check a mailbox several feet away. Because appellant's vehicle was identified as stolen on the Mobile Data Computer,[4] Offi-

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

1. D.C.Code § 22–405(b) (2001).

2. D.C.Code § 22–303 (2001).

3. 18 DCMR § 2000.10 (2001).

4. A subsequent inspection of the VIN number of appellant's vehicle revealed that it was not, in fact, stolen.

cer Jackson ordered appellant to return at least three times to no avail. Officers Thurman and Pankowski remained near the vehicles as Officer Jackson pursued appellant and grabbed his right arm. This prompted appellant to "jerk" his arm free and make a "swinging motion" at Officer Jackson. Officer Jackson dodged this motion and physically escorted appellant back to his vehicle, where he attempted to handcuff appellant. At this point, appellant once again "jerked" his right arm free and unsuccessfully "swung with a closed fist his left arm toward [Officer Jackson.]" Thereafter, Officer Pankowski participated in handcuffing appellant and the officers placed him under arrest. The three officers testified at trial and similarly described appellant as being "irate" and "combative" throughout the encounter.

Officers Jackson and Thurman testified that approximately five minutes passed before a police transport arrived. As the officers attempted to place appellant inside, appellant initially became "limp" and "dropp[ed] to the ground," only to begin kicking and flailing as the officers carried him to the vehicle. During this struggle, appellant kicked Officer Thurman.

Once appellant was placed inside the transport and its doors were closed, the three arresting officers heard repeated banging noises from within. Officer Apolinar Nunez, who operated the transport, similarly recounted hearing loud banging noises from the back of the transport and ultimately observed a dent on the left-interior door of the vehicle, which Officer Nunez testified was not there at the beginning of his shift.

At trial, appellant testified on his own behalf, denying that he ever swung at Officer Jackson or kicked Officer Thurman. Rather, appellant claimed that he was twice choked by Officer Jackson before the transport arrived, and that he remained compliant throughout the arrest and never damaged the transport. In its Findings of Fact and Conclusions of Law, the trial judge discredited appellant's testimony, concluding that appellant committed two separate assaults on Officers Jackson and Thurman and maliciously damaged the transport by intentionally kicking it.

## II.

Appellant first contends that his two APO convictions merge under Double Jeopardy principles because they occurred during one continuous course of assaultive conduct. *See, e.g., Glymph v. United States,* 490 A.2d 1157, 1160–61 (D.C.1985) (prohibiting cumulative punishment for multiple assault charges when "there was no break in the continuity of events").

"The Double Jeopardy Clause of the Fifth Amendment prohibits a second prosecution for a single crime, and it protects the defendant against multiple punishments for the same offense." *Ellison v. United States,* 919 A.2d 612, 614 (D.C. 2007) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). With respect to the latter protection, it is well established that where there is " 'an appreciable period of time' between the acts on which two criminal convictions are based," the respective acts embody distinct offenses that warrant separate punishment. *Maddox v. United States,* 745 A.2d 284, 294 (D.C.2000) (quoting *Gardner v. United States,* 698 A.2d 990, 1002 (D.C.1997)). However, even when an interval of time between two acts is "quite brief," successive punishments remain appropriate if the "defendant ... reached a fork in the road or ... acted in response to a fresh impulse" while proceeding in the criminal behavior. *Cullen v. United States,* 886 A.2d 870, 873 (D.C. 2005) (quoting *Spain v. United States,* 665 A.2d 658, 661 (D.C.1995)). Moreover, as a general rule, crimes do not merge if they

are perpetrated against separate victims. *See, e.g., Hanna v. United States,* 666 A.2d 845, 855 (D.C.1995); *accord Black v. United States,* 755 A.2d 1005, 1009 (D.C.2000).

■ Here, the trial court concluded that appellant twice swung at Officer Jackson while being brought back to his vehicle and handcuffed. This constituted the first incident of APO. Then, a period of at least five minutes passed as the officers awaited the arrival of the transport. Only afterwards did appellant kick Officer Thurman while resisting the officers' efforts to place him inside the transport. This five-minute interval constituted an "appreciable" amount of time, after which appellant formed a fresh impulse to engage in a separate APO offense, *see Maddox,* 745 A.2d at 294, perpetrated against a different victim. *See Hanna,* 666 A.2d at 855. Accordingly, because appellant's APO convictions were premised upon distinct criminal conduct, they do not merge.

### III.

■ Next, appellant claims that there was insufficient evidence adduced at trial to prove he maliciously damaged the police transport because the government did not negate that he was adequately provoked by what appellant believed was an erroneous basis for the arrest. As appellant did not raise this issue before the trial court, appellant must demonstrate that the trial court plainly erred in failing to raise the issue of provocation *sua sponte* and failing to conclude that appellant was adequately provoked. Under plain error review, appellant bears the burden of proving "(1) error, (2) that is plain, and (3) that affected appellant's substantial rights. Even if all three of these conditions are met, this court will not reverse unless (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Lowery v. United States,* 3 A.3d 1169, 1173 (D.C.2010) (internal quotation marks omit-

ted). Plain error is error that was "clear or obvious"; this is a formidable burden. *Comford v. United States,* 947 A.2d 1181, 1189 (D.C.2008) (internal quotation marks omitted).

■ In a malicious destruction of property case, malice "imports ... the absence of all elements of justification, excuse or recognized mitigation," including adequate provocation. *Brown v. United States,* 584 A.2d 537, 539 (D.C.1990). However, adequate provocation exists only when "an ordinary, reasonable person [would] lose his or her self-control and act without reflection[,]" *id.* at 543, such that society would "partially excuse[ ] or jus-tif[y] the defendant's response...." *High v. United States,* 972 A.2d 829, 834 (D.C. 2009).

■ Here, the trial court did not plainly err in failing to conclude that appellant was adequately provoked. Appellant himself, specifically testified that "when he got into the van[,] he was no longer mad." Appellant also claimed that he actually did nothing at all to the van. Given these confusing positions before the trial court, it is difficult to conclude that the error here was clear or obvious, and that the trial court should have *sua sponte* raised provocation. Therefore, we conclude that the trial court's finding of fact that appellant "intended to damage or destroy the property or was aware that his conduct created a substantial risk of harm to the property but engaged in that conduct nonetheless" was supported by sufficient evidence and not clearly erroneous.

### IV.

Finding all of appellant's arguments unpersuasive, we affirm his convictions.

*So ordered.*