# District of Columbia
# Court of Appeals

**No. 15-CO-899**

BERNARD FREUNDEL,

Appellant,

v.

UNITED STATES,

Appellee.



**CMD-18262-14**

On Appeal from the Superior Court of the District of Columbia<br>Criminal Division

BEFORE: GLICKMAN, BLACKBURNE-RIGSBY, and MCLEESE; <i>Associate Judges</i>.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of conviction is affirmed.

For the Court:

JULIO A. CASTILLO<br>Clerk of the Court

Dated: September 15, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CO-899

BERNARD FREUNDEL, APPELLANT,

FILED 9/15/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-18262-14)

(Hon. Geoffrey M. Alprin, Trial Judge)

(Argued June 21, 2016                    Decided September 15, 2016)

*Jeffrey Harris*, with whom *Frederick D. Cooke, Jr.* was on the brief, for appellant.

*Nicholas P. Coleman*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Amy H. Zubrensky*, and *Priya N. Naik*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN, BLACKBURNE-RIGSBY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Bernard Freundel pleaded guilty to fifty-two counts of voyeurism. The trial court sentenced Mr. Freundel to consecutive sentences of forty-five days of incarceration on each count and also

imposed a fine on each count.  Mr. Freundel argues that the consecutive sentences violate the Double Jeopardy Clause.  We affirm.

**I.**

In connection with Mr. Freundel's guilty plea, the United States filed an information charging Mr. Freundel with fifty-two counts of voyeurism, in violation of D.C. Code § 22-3531 (b)-(c) (2016 Supp.).  With exceptions not pertinent here, those provisions make it unlawful:

> (b) . . . to occupy a hidden observation post or to install or maintain a peephole, mirror, or any electronic device for the purpose of secretly or surreptitiously observing an individual who is:
>
> > (1) Using a bathroom or rest room;
> > (2) Totally or partially undressed or changing clothes; or
> > (3) Engaging in sexual activity[;] and
>
> (c)(1) . . . to electronically record, without the express and informed consent of the individual being recorded, an individual who is:
>
> > (A) Using a bathroom or rest room;
> > (B) Totally or partially undressed or changing clothes; or
> > (C) Engaging in sexual activity.

(2) Express and informed consent is only required when the individual engaged in these activities has a reasonable expectation of privacy.

Each count related to a separate victim, and each count alleged that Mr. Freundel violated both section 22-3531 (b) and section 22-3531 (c) as to each victim. A violation of either provision is a misdemeanor punishable by up to one year of incarceration, as well as a fine. D.C. Code § 22-3531 (f)(1).

In pleading guilty, Mr. Freundel acknowledged the truth of a proffer that included the following facts. Mr. Freundel was a rabbi in Washington, D.C. His congregation was affiliated with a nearby mikvah, which is a ritual bath primarily used by Orthodox Jewish women for spiritual purification. There were two showering and changing rooms connected to the room housing the mikvah. On numerous occasions between 2009 and 2014, Mr. Freundel placed video-recording devices inside one of those rooms. Mr. Freundel installed and maintained the devices "for the sole purpose of secretly and surreptitiously recording women who were . . . totally and partially undressed before and/or after showering" in the room.

On October 12, 2014, Mr. Freundel placed a clock radio with a hidden video recorder in the room, positioning the radio so that it faced the shower area. Later that day, an individual associated with the mikvah took the radio to the Metropolitan Police Department. Officers obtained a search warrant and found that the radio contained six video files, each depicting a woman who was completely or partially undressed before and/or after showering in the room. At Mr. Freundel's office and residence, officers recovered other hidden cameras and related equipment, as well as numerous recordings of women who were partially or totally undressed in the room. In some instances, Mr. Freundel used as many as three different recording devices at the same time, to capture different angles of the woman being recorded. Recording devices were hidden in the radio, a tabletop fan, and a tissue-box holder. Mr. Freundel periodically installed and removed the devices.

Mr. Freundel saved each recording separately and labeled each file using the name or initials of the woman recorded. None of the women knew about the recordings or consented to being recorded. With respect to the charged offenses, each of the fifty-two women was recorded undressing separately. The charged offenses took place between February 2012 and September 2014. Mr. Freundel recorded approximately one hundred additional women between 2009 and 2014.

At sentencing, defense counsel argued that it would be illegal for the trial court to impose consecutive sentences on the fifty-two counts, because Mr. Freundel engaged in a single course of conduct. The trial court disagreed. Mr. Freundel filed a motion to correct illegal sentences pursuant to Super. Ct. Crim. R. 35 (a), again arguing that the trial court could not lawfully impose consecutive sentences. The trial court denied the motion, and Mr. Freundel seeks review of that ruling.

## II.

Mr. Freundel argues that the trial court could not lawfully impose a sentence of more than one year of incarceration, because Mr. Freundel engaged in a single course of conduct. We conclude that Mr. Freundel's sentences are lawful.

## A.

The Double Jeopardy Clause prohibits multiple punishments for the same offense. *Sutton v. United States*, No. 14-CO-0955, 2016 WL 3474661, at *6 (D.C. June 23, 2016). That prohibition extends not only to consecutive sentences but also to separate convictions. *Waller v. United States*, 531 A.2d 994, 995 n.2 (D.C.

1987). Mr. Freundel frames his argument as a challenge only to his consecutive sentences, but we nevertheless treat Mr. Freundel as raising "a challenge to the convictions themselves," because multiple convictions for the same offense are unlawful even if concurrent sentences are imposed. *Id.*

Although multiple punishments for a single offense are forbidden, a defendant may receive multiple punishments for "separate criminal acts, even if those separate acts do happen to violate the same criminal statute." *Id.* (internal quotation marks omitted). Moreover, if the legislature so intends, multiple punishments for violating a single criminal statute may be imposed based on a single act. *See, e.g.*, *Lennon v. United States*, 736 A.2d 208, 209 (D.C. 1999) ("There is therefore no double jeopardy violation when the legislative intent is to impose more than one punishment for the same criminal act."). "In reviewing claims of unlawful multiple convictions [under] a single statute, our role is to determine what the legislature intended to be the allowable unit of prosecution." *Hammond v. United States*, 77 A.3d 964, 967 (D.C. 2013) (internal quotation marks omitted). We decide that question of statutory interpretation de novo. *Id.*

As previously noted, each of the fifty-two counts in this case charges Mr. Freundel with violating both section 22-3531 (b) and section 22-3531 (c). The

United States argues that those provisions establish separate offenses. Although charging multiple offenses in a single count can create procedural problems, *e.g.*, *Johnson v. United States*, 398 A.2d 354, 369 (D.C. 1979), Mr. Freundel has not challenged his convictions and sentences on that basis. We therefore do not address whether a violation of section 22-3531 (b) and a violation of section 22-3531 (c) may appropriately be charged in a single count. The United States further contends that Mr. Freundel's convictions and sentences should be affirmed as long as multiple punishments are permissible under either section 22-3531 (b) or section 22-3531 (c). Mr. Freundel does not dispute that contention, which we therefore accept for purposes of deciding this appeal. Finally, relying on *Broce v. United States*, 488 U.S. 563 (1989), the United States argues that Mr. Freundel's decision to plead guilty to fifty-two counts precludes Mr. Freundel from obtaining relief unless Mr. Freundel can establish on the face of the current record that multiple punishments are impermissible. Mr. Freundel argues to the contrary that the United States must establish from the current record that multiple punishments are permissible. Because we conclude that multiple punishments are permissible on the current record, we do not reach the question of *Broce*'s applicability.

**B.**

We consider whether Mr. Freundel's convictions and sentences were permissible under section 22-3531 (c). As noted, that provision prohibits non-consensual electronic recording of an individual who has a reasonable expectation of privacy and is using a bathroom, is totally or partially undressed, or is engaging in sexual activity. The provision by its terms is directed at protecting individual privacy. *See, e.g.*, *Ex parte Thompson*, 442 S.W.3d 325, 348-49 (Tex. Crim. App. 2014) ("[S]ubstantial privacy interests are invaded in an intolerable manner when a person is photographed without consent in a private place, . . . or with respect to an area of the person that is not exposed to the general public . . . ."; statute prohibiting non-consensual photographing or recording of person in bathroom or private dressing room was "drawn to protect substantial privacy interests").

Generally, "[t]he Double Jeopardy Clause . . . does not prohibit separate and cumulative punishment . . . for criminal acts perpetrated against different victims." *Snowden v. United States*, 52 A.3d 858, 872 (D.C. 2012) (internal quotation marks omitted); *see also, e.g.*, *Brannon v. United States*, 43 A.3d 936, 938-39 (D.C. 2012) ("[A]s a general rule, crimes do not merge if they are perpetrated against separate victims."). Under that general principle, we have interpreted many

provisions comparable to section 22-3531 (c) to permit separate punishment where a single act affected multiple victims.  As we have explained:

> In deciding whether certain conduct constitutes a single offense or multiple offenses, we do not simply count the number of discrete "acts."  That is, there is no general rule that a single act can support only a single conviction; multiple punishments are permissible even where multiple charges are the product of a single act.  *See, e.g.*, *Ruffin v. United States*, 642 A.2d 1288, 1298 (D.C. 1994) ("[W]here a single assaultive act results in the criminal injury of multiple victims, there may be as many offenses as there are victims."); *Williams v. United States*, 569 A.2d 97, 104 (D.C. 1989) (assuming defendant's conduct constituted a single assaultive act, yet nevertheless upholding seven separate manslaughter convictions); *Murray v. United States*, 358 A.2d 314, 320 (D.C. 1976) (affirming two negligent-homicide convictions in connection with a single car crash).  Rather than simply tallying "acts," we have looked to the offense's definition.  Where the definition contemplates that an injury to each new victim will constitute a separate offense, we have endorsed the imposition of multiple punishments.

*Vines v. United States*, 70 A.3d 1170, 1176-77 (D.C. 2013) (two convictions for destruction of property were not same offense for Double Jeopardy purposes, because appellant "caused two separate victims to suffer injuries to two distinct property interests"); *see also, e.g.*, *Speaks v. United States*, 959 A.2d 712, 716 (D.C. 2008) ("[W]e conclude that the statute defining the crime [of second-degree

cruelty to children] was intended to protect individual victims, and that consequently, the gravamen of the offense is the *proscribed effect on each victim*, not the acts or omissions leading to it.").

This court has not yet had occasion to consider the appropriate unit of prosecution under section 22-3531 (c) or any other provision of the voyeurism statute. We have located one out-of-jurisdiction case addressing that issue with respect to a voyeurism statute much like section 23-3531 (c). That case held that the Double Jeopardy Clause permitted imposition of two convictions, one for each victim, on a defendant who peered through a window to watch two people having sexual intercourse with each other. *State v. Diaz-Flores*, 201 P.3d 1073, 1075-76 (Wash. Ct. App. 2009) (statute at issue prohibited "view[ing], photograph[ing], or film[ing] . . . [a]nother person without that person's knowledge and consent while the person . . . is in a place where he or she would have a reasonable expectation of privacy"; "The plain language of the voyeurism statute establishes that the legislature intended the unit of prosecution to be each victim whose right to privacy is violated.") (internal quotation marks omitted); *see also* 18 Pa. Cons. Stat. Ann. § 7507.1(a)-(a.1) (West, Westlaw through 2016 Reg. Sess. Acts 1 to 101) (under statute prohibiting, among other things, "record[ing] another person without that person's knowledge and consent while that person . . . would have a

reasonable expectation of privacy," legislature explicitly provides for separate punishment as to each victim, even where recording occurs at same time and pursuant to one "scheme or course of conduct").

Although Mr. Freundel argues that multiple punishments were unlawful in this case, we do not find Mr. Freundel's arguments persuasive. First, and most broadly, Mr. Freundel argues that, no matter how many individuals he taped and no matter what other circumstances intervened between the recordings of the victims in this case, only one voyeurism sentence was lawful, because Mr. Freundel acted with a single voyeuristic purpose. It is not clear what Mr. Freundel means by a single voyeuristic purpose or whether Mr. Freundel acted with such a single purpose in this case. We need not address those issues, however, because we conclude that Mr. Freundel's argument contradicts section 22-3531 (c)'s evident purpose of protecting the privacy of individual victims and does not "comport[] with reason and with sound public policy." *Abdulshakur v. District of Columbia*, 589 A.2d 1258, 1266 (D.C. 1991). Under Mr. Freundel's interpretation, once a defendant unlawfully recorded one victim, all future voyeuristic recording, even of different victims with different recording devices in different locations and at different times, would not be separately punishable as long as the defendant in some sense had a single voyeuristic purpose. Thus, "[t]here would be no incentive

for the defendant not to do it again (and again and again)." *Id.* "This is surely not a result which the legislature intended." *Id.*

Second, Mr. Freundel draws a comparison to the provision punishing the felony offense of distributing or disseminating "a photograph, film, . . . digital video disc, or any other image or series of images . . . that the [defendant] knows or has reason to know were taken in violation of subsection (b), (c), or (d)" of section 22-3531.  D.C. Code § 22-3531 (f).  Mr. Freundel argues that a single act of disseminating multiple recordings of different victims would constitute a single violation of section 22-3531 (f) and thus would be punishable by no more than a single five-year term of incarceration.  D.C. Code § 22-3531 (f)(2).  Thus, he concludes, it would not make sense to permit separate misdemeanor convictions under section 22-3531 (c) for each victim, because the maximum penalty for violating the less serious misdemeanor offense by recording numerous victims could far exceed the maximum penalty for the more serious felony offense of disseminating recordings of numerous victims.

Mr. Freundel's argument rests on the premise that a single transmission of recordings of multiple victims is punishable as a single offense.  The correctness of Mr. Freundel's premise is unclear.  *Compare, e.g.*, *Brown v. State*, 912 N.E.2d 881,

892-95 (Ind. Ct. App. 2009) (separate convictions permissible based on single act of disseminating separate images of child pornography; statute prohibited disseminating "matter" depicting sexual conduct by child, where "matter" was defined as any of various specified materials as well as "other . . . materials"), *with, e.g.*, *State v. Losada*, 175 So. 3d 911, 912-15 (Fla. Dist. Ct. App. 2015) (only one conviction permissible for granting access to thirty-two images on file-sharing site; statute prohibited "transmitting" child pornography and defined "transmit" as "the act of sending and causing to be delivered any image").  We express no view on that point, however, because in any event we see no incongruity sufficient to undermine the conclusion that recording multiple victims ordinarily constitutes multiple violations of section 22-3531 (c).

Third, Mr. Freundel argues that the legislative history of the voyeurism statute contradicts the conclusion that a defendant may separately be punished under section 22-3531 (c) for each victim.  We do not agree.  Mr. Freundel relies on the title of the omnibus act establishing the voyeurism statute, which describes the statute as making it unlawful to record "individuals" "engaged in personal activities."  According to Mr. Freundel, the use of "individuals" rather than "individual" in the title shows that the legislature intended to punish the conduct of recording rather than to separately protect the privacy of each individual who is

recorded.  Mr. Freundel places unwarranted weight on the title of omnibus act.  As we have explained:

> The significance of the title of the statute should not be exaggerated.  The Supreme Court has stated that the title is of use in interpreting a statute only if it sheds light on some ambiguous word or phrase in the statute itself.  It cannot limit the plain meaning of the text, although it may be a useful aid in resolving an ambiguity in the statutory language.

*Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013) (citations, brackets, and internal quotation marks omitted).  Moreover, both the singular and the plural form of "individual" appear in the legislative-history materials, *compare* D.C. Council, Report on Bill 16-247 at 12 (April 28, 2006) ("The Committee recommends that the language be changed to make it illegal for someone to . . . surreptitiously observ[e] *an individual . . . .*") (emphasis added), *with id.* at 2 ("[The voyeurism bill] criminaliz[es] the . . . electronic recording of *individuals . . . .*") (emphasis added), which suggests that the forms were used interchangeably.  *Cf.* D.C. Code § 45-602 (2012 Repl.) ("Words importing the singular number shall be held to include the plural, and vice versa, except where such construction would be unreasonable.").  In any event, to the extent that the use of the singular or the plural form of "individual" sheds light on legislative intent, our primary focus must be on

the statutory language, which uses the singular rather than the plural. D.C. Code § 22-3531 (c)(1) (prohibiting recording of "*an individual* who is . . . [t]otally or partially undressed or changing clothes" without consent "of *the individual* being recorded" when "*the individual* . . . has a reasonable expectation of privacy") (emphasis added); *cf., e.g.*, *Sanders v. United States*, 809 A.2d 584, 606 (D.C. 2002) (relying on statutory use of singular as supporting conclusion that legislature intended to permit multiple punishments); *Abdulshakur*, 589 A.2d at 1267 (attributing "marginal[]" significance to use of singular in statute when determining whether legislature intended to permit multiple punishments).

Mr. Freundel also relies on a letter from the Attorney General of the District of Columbia to the legislative committee considering the voyeurism statute. In that letter, the Attorney General contrasted two versions of the statute that were then under consideration. Specifically, the Attorney General noted that one version provided for different penalties depending on whether the victim was a minor or an adult and whether the conduct was a first or subsequent offense, whereas the other version provided for different penalties depending on whether the defendant recorded a victim or distributed images. We see nothing in the Attorney General's letter suggesting that a defendant who recorded multiple individuals could be punished only once.

Fourth, Mr. Freundel accurately points out that we have in some circumstances recognized an exception to the principle that offenses such as assault ordinarily permit multiple convictions for a single act affecting multiple victims. *See, e.g.*, *Snowden*, 52 A.3d at 873 (D.C. 2012) ("Where by a single act or course of action a defendant has put in fear different members of a group towards which the action is collectively directed, he is guilty of but one offense. Multiple convictions and consecutive sentences will be appropriate only where distinct, successive assaults have been committed upon the individual victims.") (brackets omitted; quoting *United States v. Alexander*, 152 U.S. App. D.C. 371, 381-82, 471 F.2d 923, 933-34 (1972)); *cf. Bowles v. United States*, 113 A.3d 577, 579-80 (D.C. 2015) (discussing *Ladner v. United States*, 358 U.S. 169 (1958) (holding that single discharge of shotgun injuring two federal officers was punishable as single violation of statute prohibiting interference with federal officers)).

It is unclear whether the exception noted by Mr. Freundel has any application to the voyeurism statute. *Compare, e.g.*, *Graure v. United States*, 18 A.3d 743, 763 (D.C. 2011) ("[T]he rule that a single assaultive act directed at a group of individuals, but injuring no one, bears only one count of assault applies in cases involving 'threat to do bodily harm' assault (sometimes called 'intent-to-frighten' assault), but does not apply in cases involving 'attempted-battery' assault,

which has different elements.") (internal quotation marks omitted); *Speaks*, 959 A.2d at 714-17 (declining to apply exception to second-degree child cruelty), *with, e.g.*, *Smith v. United States*, 295 A.2d 60, 61 (D.C. 1972) (single threat uttered to two people standing together permitted only one conviction). We do not decide that question. Rather, we hold that in any event the exception does not apply in the undisputed circumstances of the present case, because Mr. Freundel's conduct was not a single act directed at the victims generally. By his own acknowledgment, Mr. Freundel used multiple recording devices over a period of years to record multiple victims, each of whom was recorded undressing separately. Because each victim was recorded undressing separately, we need not decide whether multiple punishments would be permissible based on a single recording depicting more than one victim at the same time. Nor need we address what other factual circumstances might reflect a "fork in the road" or "new impulse" permitting multiple punishments. *See generally, e.g.*, *Spain v. United States*, 665 A.2d 658, 660 (D.C. 1995) (multiple punishments permissible where defendant "reached a decision point, a fork in the road leading to a new impulse, resulting in a different offense") (internal quotation marks omitted).

Fifth, Mr. Freundel relies on *Whylie v. United States*, 98 A.3d 156 (D.C. 2014), to argue that we should interpret section 22-3531 (c) as criminalizing a

course of conduct rather than separate offenses against individual victims. *Whylie*, however, involved the stalking statute, which specifically defines stalking as a "course of conduct," rather than as a single act. 98 A.3d at 161-62. Section 22-3531 (c) contains no similar language. Moreover, *Whylie* did not address the issue in this case -- whether multiple punishments were permissible because multiple individuals were affected by the defendant's action.

Sixth, we are unpersuaded by Mr. Freundel's reliance on *Bell v. United States*, 349 U.S. 81 (1955). In *Bell*, the defendant had in one trip transported two women across state lines for "immoral purpose[s]," in violation of the Mann Act. *Id.* at 82 (internal quotation marks omitted). Concluding that it was unclear whether the legislature intended multiple punishments in such circumstances, the Supreme Court held that only one conviction was permissible. *Id.* at 82-83. We have explained, however, that the Mann Act was ambiguous because it had two possible purposes: either "to protect each woman carried across state lines, or rather to strike generally at the business [of trafficking in women] and in particular at its use of interstate transportation facilities." *Murray*, 358 A.2d at 320 n.20 (internal quotation marks omitted). One significant indication that the Mann Act had the latter purpose rather than the former is that the Mann Act applied without regard to the consent of the woman who was transported across state lines. *See,*

*e.g.*, *United States v. Phillips*, 640 F.2d 87, 96 (7th Cir. 1981) ("The kidnapping statute was enacted to protect individual victims, while the purpose of the Mann Act is to preserve community moral standards. The Mann Act does not protect the individual woman transported in the same way that the kidnapping statute protects a victim; the consent of the woman involved is no defense to a Mann Act charge, but would be a defense to kidnapping."). In contrast, section 22-3531 (c) requires proof that the victim did not consent to being recorded. For that reason and for the others we have discussed, section 22-3531 (c) is plainly directed at protecting individual privacy.

Finally, Mr. Freundel invokes the rule of lenity, which operates to preclude "multiple convictions under the same statute that are based on the same act" if "it is unclear whether the legislature intended to impose multiple punishments." *Heard v. United States*, 686 A.2d 1026, 1028 (D.C. 1996). "The rule of lenity is reserved for situations where the [statute's] language and structure, legislative history, and motivating policies do not remove any reasonable doubt as to the scope of [the] statute." *Id.* at 1029 (internal quotation marks omitted). We conclude that the rule of lenity does not aid Mr. Freundel, because "the rule of lenity does not apply to situations involving multiple victims where, as here, both

the language and logic of the statute reflect the legislature's intent to safeguard . . . its constituents as individuals." *Murray*, 358 A.2d at 321.

In sum, section 22-3531 (c) unambiguously permits separate punishment for each of Mr. Freundel's fifty-two victims in this case. The judgment of the Superior Court is therefore

*Affirmed.*