*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CM-0182

KHARI ALSTON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2023-DVM-000816)

(Hon. Elizabeth Carroll Wingo, Trial Judge)

(Submitted June 3, 2025                    Decided March 12, 2026[*])

*Nigel A. Barrella* was on the briefs for appellant.

*Matthew M. Graves*, United States Attorney at the time the brief was filed, *Edward R. Martin, Jr.*, United States Attorney at the time the supplemental brief was filed, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Elizabeth Gabriel*, Assistant United States Attorneys, were on the briefs for appellee.

Before MCLEESE and SHANKER, *Associate Judges*, and GLICKMAN, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

SHANKER, *Associate Judge*: Appellant Khari Alston approached his former partner, Fataya Bigesby, outside of her apartment building, snatched her purse from her, followed her while demanding that she stop ignoring him, pushed her when she continued to do so, and then flung her purse into the street, where passing cars ran over the purse and its contents. Following a bench trial in the Superior Court, the trial court convicted Mr. Alston of one count each of second-degree theft and simple assault and imposed a suspended term of imprisonment and twelve months of probation.

On appeal, Mr. Alston contends that, with respect to his theft conviction, the government was required, but failed, to prove that he intended to permanently deprive Ms. Bigesby of her property at the moment that he took it—that his guilty mind must have concurred with his unlawful act. Regarding his assault conviction, Mr. Alston argues that the government was required, but failed, to put forth sufficient evidence that he intended to physically injure (or cause apprehension of physical injury in) Ms. Bigesby.

We affirm. With respect to his theft conviction, Mr. Alston's argument rests on the assumption that he had to have the requisite intent when he initially took Ms. Bigesby's purse. The theft statute, however, allows for conviction not only where a defendant wrongfully takes property, but also where a defendant

wrongfully uses—for example, disposes of without permission—property. Because the trial court found (both at trial and following a record remand by this court), and a reasonable factfinder could have found, that Mr. Alston both (1) threw Ms. Bigesby's property, without permission, into a road with oncoming cars and (2) intended at that time to permanently deprive Ms. Bigesby of her property, the record presents no concurrence problem.

Turning to Mr. Alston's assault conviction, the record reveals sufficient evidence to convict Mr. Alston of nonsexual offensive touching assault, for which an intent to cause physical injury (or apprehension thereof) is not required.

## I. Background

## A. Factual Background

On the morning of July 18, 2023, Ms. Bigesby was returning to her apartment building on 7th Street, NW, after dropping off her child—of whom Mr. Alston is the father—at daycare. As she neared the building's front entrance, she felt someone "yank[ ]" her purse from her hands. When she turned, she saw Mr. Alston holding her purse and stooping to retrieve some items that had spilled out of it when he took it.

Ms. Bigesby walked away from Mr. Alston. Mr. Alston followed, purse in hand, repeatedly demanding, "[W]hy are you ignoring me? Why are you not talking to me?" He then pushed Ms. Bigesby, turned away from her, and began walking away, still carrying her purse. Ms. Bigesby followed him while dialing 9-1-1.

After tossing some items from the purse onto the sidewalk, Mr. Alston threw the purse and its remaining contents into the adjacent street, where passing cars ran over the items and "destroyed" them. A surveillance camera mounted on an adjacent building captured Mr. Alston's taking of the purse. And, although the footage did not capture the push about which Ms. Bigesby testified (Ms. Bigesby and Mr. Alston had at that point left the camera's field of view), Mr. Alston walked back into frame before throwing Ms. Bigesby's purse into traffic.

Mr. Alston then walked toward a church and Ms. Bigesby followed at a distance, continuing to update 9-1-1 operators on his location. Police arrived about an hour after the first 9-1-1 call. Although someone—according to Ms. Bigesby, Mr. Alston's mother—turned in Ms. Bigesby's keys and wallet at the police station the next day, Ms. Bigesby's purse and its other contents were never recovered.

Ms. Bigesby testified that the incident left her feeling "harassed" and "unsafe" in her own neighborhood. Although she at times testified that "there was no assault,"

she also stated both that (1) Mr. Alston pushed her and (2) she considered a push to be an assault.

## B. Procedural Background

The government charged Mr. Alston by information with (1) simple assault, D.C. Code § 22-404, and (2) second-degree theft, *id.* §§ 22-3211, -3212(b). The case proceeded to a bench trial, at the end of which the court found Mr. Alston guilty on both counts. Regarding theft, the court found that Mr. Alston took Ms. Bigesby's purse from her by force and against her will and determined that "when [Mr. Alston] thr[e]w it into the street, there's an intent to deprive at that point." The trial court also concluded that "just taking the property from her is an assault."

Mr. Alston timely appealed. We remanded the record "so that the trial court can clarify whether it finds that Mr. Alston committed an act prohibited by the theft statute (1) when he took the purse, (2) when he threw the complainant's belongings to the ground, or (3) when he threw the purse into the street," and we noted that the trial court could "indicate that it finds that two or more of these acts independently violated the theft statute." We additionally asked the trial court to "clarify whether, at the time of the act(s) committed by Mr. Alston, it finds that Mr. Alston intended to deprive the complainant of her property," and we "invite[d] the trial court to consider" our decision in *Alleyne v. United States*, 327 A.3d 472 (D.C. 2024), which

we issued after the trial in this case, in the course of clarifying its findings. In *Alleyne*, we assumed without deciding that the offense of robbery requires concurrence between the act of stealing and the requisite intent, *id.* at 482, and we held that where a person takes property with the intent to return it only upon the satisfaction of a condition they have no right to impose, that person possesses the requisite mens rea for robbery, *id.* at 481.

In its order following our remand, the trial court reissued findings of fact, which largely tracked the findings it made after trial.[1] The court then concluded, among other things, (1) that Mr. Alston "wrongfully obtained the property of another, that is, the purse and its contents," when he snatched Ms. Bigesby's purse from her hand; (2) that "at the time [Mr. Alston] took the purse from [Ms. Bigesby's] hand, he had the requisite intent for Second Degree Theft, that is, that Mr. Alston intended to permanently deprive Ms. Bigesby of a right to the purse and at least some of its contents, or, at the very least, only to return it 'upon satisfaction of a condition [he had] no right to impose,' that is, to interact with him in a time, manner and location of his choosing"; and (3) that this conclusion was supported by the facts that Mr. Alston did not pick up and return all of Ms. Bigesby's belongings to her or return her purse to her, took actions indicating that he intended to force

---

[1] Despite being directed to, neither party notified this court that the trial court had issued its order on remand.

Ms. Bigesby to interact with him, and then threw the purse and its remaining contents into the street, "where [their] total loss was a likely and foreseeable consequence." The trial court added that Mr. Alston's conduct when he threw the purse and its remaining contents into the street showed that he not only intended to permanently deprive Ms. Bigesby of those items at that time but also "had the requisite intent all along."

## II. Analysis

Mr. Alston contests the sufficiency of the evidence as to both of his convictions. He first contends that because he followed rather than fled from Ms. Bigesby, and discarded the purse in her presence, the government failed to prove that he possessed the requisite intent to deprive at the moment he took the purse. Second, because the record reveals no attempt to cause or threaten physical injury, he suggests that his conduct cannot have satisfied the elements of assault. We disagree on both fronts and affirm both convictions.

## A. Standard of Review

When assessing whether the government presented sufficient evidence to sustain a conviction, we review the trier of fact's judgment in the light most favorable to the verdict, as it is "the province of the trier of fact to weigh the

evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Williams v. United States*, 314 A.3d 1158, 1181 (D.C. 2024) (quoting *Dickerson v. United States*, 650 A.2d 680, 683 (D.C. 1994)). We "affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Alleyne*, 327 A.3d at 479 (citation modified). That said, *some* relevant evidence is not sufficient evidence; for us to affirm, the evidence "must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt." *Sanders v. United States*, 330 A.3d 1013, 1032 (D.C. 2025) (quoting *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc)). Where bench trials are concerned, we "are deferential to the prerogatives and advantages of the trial judge" and "will not disturb the trial judge's factual findings unless we can conclude they were plainly wrong or without evidence to support them." *Augustin v. United States*, 240 A.3d 816, 824 (D.C. 2020).

## B. Theft

The District's theft statute proscribes "wrongfully obtain[ing] or us[ing] the property of another" with the intent to either "deprive the other of a right to the property or a benefit of the property" or "appropriate the property to his or her own use or to the use of a third person." D.C. Code § 22-3211(b). "[W]rongfully obtains

or uses" means, among other things, making an unauthorized disposition of property. *Id.* § 22-3211(a). "Deprive" means either to (1) "withhold property or cause it to be withheld from a person permanently or for so extended a period or under such circumstances as to acquire a substantial portion of its value" or to (2) "dispose of the property, or use or deal with the property so as to make it unlikely that the owner will recover it." *Id.* § 22-3201(2).

The government does not contest Mr. Alston's contention that the theft statute requires Mr. Alston's criminal intent to have concurred with his criminal act. Mr. Alston, for his part, does not dispute the government's contention that one who intends to use, deal with, or dispose of property in a manner likely to lead to its destruction intends to deprive the property's owner of a right to or benefit of the property.[2] In line with our usual practice, we assume without deciding that the

---

[2] The closest that Mr. Alston comes to making such an argument is his contention that, regardless of the statute's definition of "deprive," this court should not interpret D.C. Code § 22-3211 to reach any conduct that was not proscribed by the common-law offense of larceny. This argument, however, is inconsistent with our precedent and the text of the theft statute.

To be sure, Section 22-3211(a) defines the acts prohibited by the theft statute to "include[ ] conduct previously known as larceny . . . ." But the term "include" is presumptively nonexclusive—it indicates an "illustrative rather than an exhaustive" list. *See Conrad v. D.C. Alcoholic Beverage Control Bd.*, 287 A.3d 635, 647 (D.C. 2023); *see also* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132-33 (2012). So, the fact that the theft statute includes conduct previously known as larceny cannot be read to limit its reach, in the context of takings, to only that conduct that was proscribed by prior statutory

above points are correct for purposes of this appeal. *See, e.g.*, *McClam v. United States*, 329 A.3d 298, 303 (D.C. 2025); *Moon v. Fam. Fed'n for World Peace & Unification Int'l*, 281 A.3d 46, 62 n.18 (D.C. 2022); *Freundel v. United States*, 146 A.3d 375, 379 (D.C. 2016).

Mr. Alston focuses his argument on the concurrence between his intent and his act of initially taking Ms. Bigesby's purse. But, as noted, one can be guilty of theft if they wrongfully "use[d] the property of another"—including by making an unauthorized disposition of the property—with the intent to "deprive the other of a right to the property or a benefit of the property," meaning the intent to "dispose of the property . . . so as to make it unlikely that the owner will recover it." D.C. Code §§ 22-3211(a), (b), 22-3201(2). In addition to concluding that Mr. Alston intended to permanently deprive Ms. Bigesby of a right to her purse and at least some of its contents *at the time he took the purse from her hand*, the trial court concluded that Mr. Alston's separate action of throwing the purse and its remaining contents into the street made it "clear[ ]" that he intended to permanently deprive Ms. Bigesby of the purse and some of its contents *at that time*. That is, the trial court found Mr. Alston guilty on two bases, the second one being that, in throwing

---

and common-law proscriptions. *Cf. Cash v. United States*, 700 A.2d 1208, 1212 (D.C. 1997) ("We hold that the word 'deception,' as used in [the theft] statute, *goes beyond the common law definition* of false pretenses and includes any misrepresentation as to the future, as well as the past or present." (emphasis added)).

Ms. Bigesby's purse, he made an unauthorized disposition of Ms. Bigesby's property with the concurrent intent to dispose of it in a manner "where its total loss was a likely and foreseeable consequence."[3]

Sufficient evidence supports that conclusion. Testimony and surveillance footage showed, and the trial court found, that Mr. Alston threw the purse and its remaining contents into a street that was busy with traffic. A reasonable factfinder could determine that when Mr. Alston did so, he had the intent to dispose of the property so as to make it unlikely that Ms. Bigesby would recover it. Mr. Alston

---

[3] In its closing argument at trial, the government argued that Mr. Alston was guilty of theft based on his disposition of the purse (that is, without regard to whether his seizure of the purse from Ms. Bigesby also violated the statute).

In response to Mr. Alston's brief on appeal, the government has mainly argued that even assuming Mr. Alston could not be convicted of theft unless he had the intent to deprive required by the theft statute at the moment he seized the purse, his post-taking act of destruction proves that he did have that intent at that time. We do not, however, view this as a concession by the government that the assumption is correct or that the trial court found Mr. Alston guilty on an inadequate or erroneous rationale. The sufficiently clear implication of the government's argument is that without the (incorrect) assumption, Mr. Alston's conviction must be upheld for the reasons stated by the trial court. Given that the trial court articulated the basis of its verdict and Mr. Alston had a reasonable opportunity and the incentive to challenge that basis on appeal, we see no procedural unfairness in relying on the trial court's unchallenged rationale to affirm the conviction. We have repeatedly held that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Smith v. United States*, 306 A.3d 67, 76 (D.C. 2023) (citation modified). We have discretion to exercise that "independent power" where, as here, there is no unfairness in doing so.

argues that a reasonable factfinder could have determined only that he intended to "inconvenien[ce]" Ms. Bigesby by "dropping the purse" on the street. We are not persuaded by this argument, however, as it depends on too charitable a view of Mr. Alston's purse-disposal method. Surveillance footage shows Mr. Alston tossing Ms. Bigesby's purse into the path of oncoming traffic. Triers of fact are permitted to use their common sense, *Ross v. United States*, 331 A.3d 220, 225 (D.C. 2025), and we think all would agree that the likely outcome of tossing an object in the path of moving vehicles is the destruction of that object. A reasonable factfinder could therefore infer from Mr. Alston's act of tossing the purse into oncoming traffic that he intended to destroy the purse and its contents.

Accordingly, the evidence was sufficient to support Mr. Alston's theft conviction.

### C. Assault

Mr. Alston also challenges the sufficiency of the evidence with respect to his conviction for simple assault under D.C. Code § 22-404.[4] His argument has two parts. First, he contends that, to secure an assault conviction, the government must

---

[4] Section 22-404 provides, in relevant part, that "[w]hoever unlawfully assaults, or threatens another in a menacing manner, shall be fined not more than the amount set forth in § 22-3571.01 or be imprisoned not more than 180 days, or both." D.C. Code § 22-404(a)(1).

prove an attempt to either "cause physical injury" or "put the complainant in apprehension of physical injury." Second, he suggests that neither of the two acts relied upon by the trial court—his snatching of the purse and his push of Ms. Bigesby—satisfies the above standard. The government responds by citing cases in which this court has held that either the snatching of a person's belonging or a push of someone's person satisfies the requirements of the assault statute without regard to how much force the alleged assaulter applied. *See, e.g.*, *Mahaise v. United States*, 722 A.2d 29, 30 (D.C. 1998) (explaining that a finding that the defendant had "removed the phone from the complainant's hand and then took her cigarette from her other hand" could support an assault conviction); *Dunn v. United States*, 976 A.2d 217, 222-23 (D.C. 2009) (affirming an assault conviction where a defendant pushed a security guard).

We addressed our jurisdiction's criminal assault offense in our en banc decision in *Perez Hernandez v. United States*, 286 A.3d 990 (D.C. 2022) (en banc). In that case, we recognized that "an offensive touching, performed with minimal force and not of a sexual nature, may be a criminal assault," as "proof of a battery will support a conviction of assault." *Id.* at 993, 999 (citation modified). It was this reasoning, and not considerations of prospective or actual physical injury,[5] we

---

[5] Because "[w]hen the charge of assault is based on an offensive touching, it is fruitless to think of the crime as an attempt with force or violence to do a corporal

explained, that undergirded our holding in *Dunn* and related cases. *See id.* at 997-98

(noting that *Dunn* affirmed a push-related assault conviction because the

defendant's push was "offensive to [the] victim"). We then went on to set forth the

elements necessary to prove this form of assault:

> The government must prove that the defendant (1) touched another; (2) that he did so purposely, not by accident; (3) that the touching offended the other person; (4) that the touching would offend a person's reasonable sense of personal dignity; and (5) that the defendant either acted with the purpose of causing offense *or* acted knowing that the touching would cause offense.

*Id.* at 1004. A touch offends a person's reasonable sense of personal dignity if it

"was unwarranted by the social usages prevalent at the time and place at which it

was inflicted." *Jones v. United States*, 293 A.3d 395, 401 (D.C. 2023) (citation

modified).

*Perez Hernandez* left certain questions unanswered. As we recognized in

*(Anthony) Smith v. United States*, 306 A.3d 67, 77 (D.C. 2023), *Perez Hernandez*

"was not entirely clear" about whether proof of some or all of the elements of

nonsexual offensive touching assault is required where other forms of assault are

---

injury to another," *id.* at 1003-04 (citation modified), we reject Mr. Alston's argument that he cannot be found guilty of any form of assault absent a finding that his snatch or push was likely to cause physical injury to Ms. Bigesby.

concerned. In *(Anthony) Smith*, we cleared up a portion of this ambiguity, holding that proof of *Perez Hernandez*'s "intentional touching" element is required in cases, like this one, where (1) no sexual conduct was involved and (2) "the defendant's conduct caused no physical damage" to the body of the complainant. *Id.* And in *G.W. v. United States*, 323 A.3d 425, 437 (D.C. 2024) (citation modified), we read *(Anthony) Smith* to "clarif[y] that nonsexual offensive touching assault [ ] encompasses scenarios where [a] defendant's conduct caused no physical damage to the complainants' bodies, so that the conduct would constitute criminal assault solely by virtue of the offensive nature of the touching." But in neither case did we hold that the government *must* proceed under a nonsexual offensive touching theory—and therefore prove *all* the elements required by that theory—whenever a nonsexual assault causes no physical damage. Nor did we address whether the elements that must be proven to secure convictions for other forms of assault (e.g., intent-to-frighten assault) have changed in light of *Perez Hernandez*. *See id.* (acknowledging that this court, in contrast to nonsexual offensive touching assault, has "yet to assign a specific mens rea using modern terminology" to the "broader umbrella of attempted or completed battery assault").

We need not answer the above questions today. Assuming without deciding that the government was required to prove all of the elements of nonsexual offensive touching assault in this case, the evidence that it introduced was sufficient to do so.[6]

We confine our analysis to Mr. Alston's snatching of Ms. Bigesby's purse.[7] The surveillance footage of the snatching allows a reasonable factfinder to draw the conclusion that Mr. Alston (1) touched Ms. Bigesby's person[8] and (2) did so on purpose, i.e., not by accident. As for the snatching's subjective and objective offensiveness, Ms. Bigesby herself testified that the snatching made her feel "harassed" and "unsafe," and we feel confident that any person walking the

---

[6] The trial court made no specific findings with respect to the elements of any assault offense, let alone the *Perez Hernandez* elements. In previous cases, we have responded to the absence of such findings by remanding for the trial court to make them in the first instance. *See, e.g.*, *Jones*, 293 A.3d at 401; *G.W.*, 323 A.3d at 438-39. But because Mr. Alston does not object to the lack of specific findings by the trial court, we consider the point abandoned and decline to remand on this basis. *See (Damian) Smith v. United States*, 169 A.3d 887, 902 (D.C. 2017) (declining to reach, in a criminal case, a point not urged in the appellant's initial brief); *cf. G.W.*, 323 A.3d at 435 (indicating that the appellant affirmatively argued on appeal that reversal was required in the absence of specific findings).

[7] Because the trial court convicted Mr. Alston of only one count of simple assault, we need not address whether the evidence was sufficient to also establish assault with respect to Mr. Alston's push.

[8] Where a person is holding property such as a purse in their hand and someone snatches that property, the law considers the snatcher to have touched the person of the property's holder. *See Mahoney v. United States*, 243 A.2d 684, 685 (D.C. 1968) (concluding that snatching a bag from someone's hand "constitute[d] an assault").

District's streets would be offended if their bag was snatched away from them. *See Buchanan v. United States*, 32 A.3d 990, 1003-04 (D.C. 2011) (Ruiz, J., concurring) (stating that "jostling or touching in the course of a theft" is inherently "offensive in nature"). And with respect to the final element—purposeful or knowing cause of offense—a reasonable factfinder could infer from the act of snatching itself that Mr. Alston knew that Ms. Bigesby would be offended by his actions. *See C.C. v. G.D.*, 320 A.3d 277, 293-94 (D.C. 2024) (noting the "general principle that a factfinder may infer that people intend that natural and probable consequences of their acts knowingly done" (citation modified)); *Buchanan*, 32 A.3d at 1004 (Ruiz, J., concurring) ("Where an act is violent or clearly offensive in nature, evidence of the act itself will suffice to infer the necessary assaultive intent."). Put simply, we see no way in which anyone could think that snatching a purse from someone's grasp would not offend that person. So, the evidence was sufficient for the trial court to find Mr. Alston guilty of assault.

Mr. Alston offers only one counterargument, and it is unpersuasive. He emphasizes that Ms. Bigesby "made repeated statements . . . that no assault occurred" and suggests that, in light of her conclusion in that regard, the evidence could not have been sufficient to convict him. We reject this argument for two reasons.

First, it is not clear that Ms. Bigesby in fact believed that no assault occurred. True, she initially testified that "there was no assault that day." But she immediately thereafter (1) responded "yes" when asked whether she considered a push to be an assault and (2) emphasized that a push "did happen."

Second, Ms. Bigesby's "no assault" statement was a legal conclusion by a fact witness that could not have been binding—it is the trial court's role when presiding over a bench trial to interpret the law and apply it to the facts, not the complainant's. *See Arshack v. United States*, 321 A.2d 845, 851 (D.C. 1974) ("Upon the court rests the responsibility of declaring the law; upon the [factfinder], the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be." (citation modified)).

Accordingly, we affirm Mr. Alston's assault conviction.

## III. Conclusion

For the foregoing reasons, we affirm Mr. Alston's convictions.

*So ordered*.