## COMMONWEALTH *vs.* MICHAEL ROBERTSON.

Suffolk. November 4, 2013. - March 5, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Electronic Surveillance. Supreme Judicial Court,* Superintendence of inferior courts. *Practice, Criminal,* Dismissal, Interlocutory appeal. *Statute,* Construction. *Privacy. Words,* "Partially nude."

A Boston Municipal Court judge erred in denying a criminal defendant's motion to dismiss an indictment charging a violation of G. L. c. 272, § .105 (*b*), arising from his actions, as a passenger on public transportation, of aiming his cellular telephone at the crotch area of seated female passengers who were wearing skirts or dresses and attempting secretly to photograph or videotape a visual image of the area, where such conduct did not fall within the scope of § 105 (*b*), given that the female passengers were not "nude or partially nude" or in a place where they had a reasonable expectation of privacy not to be so photographed, as required to prove a violation of § 105 (*b*). [374-380]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 18, 2012.

The case was reported by *Lenk,* J.

*Michelle Menken* for the defendant.

*Cailin M. Campbell,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. At issue is whether G. L. c. 272, § 105 (*b*) (§ 105 [*b*]), which prohibits secretly photographing or videotaping a person "who is nude or partially nude" in certain circumstances, includes "upskirting."[1] The Commonwealth

[1] "Upskirting" is the practice of secretly photographing underneath a woman's dress or skirt. See Horstmann, Protecting Traditional Privacy Rights in a Brave New Digital World: The Threat Posed by Cellular Phone-Cameras and What States Should Do to Stop It, 111 Penn. St. L. Rev. 739, 739 n.1 (2007) (" 'Upskirting' generally refers to the practice of taking unwanted pictures up a woman's skirt or dress"); Zeronda, Street Shootings: Covert Photography and Public Policy, 63 Vand. L. Rev. 1131, 1132-1133 (2010) ("upskirt photography involves taking pictures of women up their skirts").

alleged in two criminal complaints that the defendant, Michael Robertson, while riding as a passenger on the Massachusetts Bay Transportation Authority (MBTA) trolley on two occasions, aimed his cellular telephone camera at the crotch area of a seated female passenger and attempted secretly to photograph or videotape a visual image of the area in violation of § 105 (*b*). The defendant sought relief from the denial of his motion to dismiss the two complaints. He contends that § 105 (*b*) does not criminalize the conduct he is charged with having committed. We agree and reverse the order of the Boston Municipal Court judge denying the defendant's motion to dismiss.

1. *Facts and procedural history.* We summarize the facts as alleged by the Commonwealth.[2] At approximately 8:30 A.M. on August 11, 2010, while the defendant was a passenger on an MBTA trolley in Boston, he turned on his cellular telephone camera and held it by his waist. A woman wearing a skirt was seated across from him, and an image of the woman's upper leg appeared on the screen of the defendant's cellular telephone. A passenger who observed the defendant's actions reported the incident to the MBTA transit police (transit police) and stated that the woman being photographed appeared to be unaware that she was being photographed. At approximately 5 P.M. that same day, a second MBTA passenger reported to the transit police that she saw the defendant attempting to photograph a woman's crotch area. With her own cellular telephone, she captured images of the defendant taking those photographs and forwarded them to the transit police.

As a result of these two reports, transit police officers initiated a decoy operation the next day at around 5 P.M. When the officers saw a man whom they identified as the defendant[3] board the MBTA trolley, the officers boarded as well. The defendant stood in a stairwell of the trolley, and the female decoy officer, who was wearing a dress, sat across from him.

[2]The facts are taken from the affidavits of Detective Sean Conway and Lieutenant Detective Mark Gillespie of the Massachusetts Bay Transportation Authority (MBTA) transit police department, submitted in support of the applications for criminal complaints.

[3]The transit police made the identification based on the photographs forwarded to them the day before by the second reporter.

Between the Park Street and Government Center MBTA stations, the defendant directed his cellular telephone camera lens to within two to three feet of the decoy officer, focusing on her crotch area, and steadily held the telephone in that position for approximately one minute. In addition, a red light on the defendant's telephone was illuminated, indicating that it was videotaping.

After observing this event, the other transit police officers approached the defendant, advised him to stop, and attempted to seize his cellular telephone, an attempt that the defendant resisted. Ultimately, the officers succeeded in securing the telephone and noted that it had been recording until the officers turned off the recording function. The defendant was placed under arrest.

On December 8, 2011, two criminal complaints issued charging the defendant under G. L. c. 274, § 6, with attempting to commit the offense of photographing, videotaping, or electronically surveilling a nude or partially nude person in violation of § 105 (*b*).[4,5] On March 6, 2012, the defendant filed a motion to dismiss the complaints, which a Boston Municipal Court judge denied on August 3. Thereafter, the defendant filed a petition

[4]The defendant originally was charged on two different dates between August 13 and November 30, 2010, in two separate complaints alleging the completed crime of photographing, videotaping, or electronically surveilling a nude or partially nude person in violation of G. L. c. 272, § 105 (§ 105). He moved to dismiss those charges on the same grounds he raises here. While the defendant's motion to dismiss was pending, the Commonwealth moved to amend the complaints to charge only attempt because it could not gain sufficient access to the defendant's cellular telephone to examine the images he took and determine what they captured. On October 17, 2011, a Boston Municipal Court judge denied both the motion to dismiss and the motion to amend. On October 18, the Commonwealth entered a nolle prosequi with respect to each of these complaints, and on December 8, the two complaints for attempt issued.

[5]In one criminal complaint, the defendant is charged with attempting to photograph and in the other with attempting to videotape. The complaint for attempting to videotape states that the date of the offense was August 11, 2010, whereas the complaint for attempting to photograph states that the date of the offense was August 12, 2010. Detective Conway's affidavit is less than clear whether the defendant was attempting to videotape or photograph on August 11; as previously indicated, videotaping occurred during the decoy operation on August 12. Whether the defendant attempted to photograph or to videotape is immaterial to our analysis of whether § 105 (*b*) criminalizes his conduct.

under G. L. c. 211, § 3, in the county court, seeking interlocutory review of the denial of his motion to dismiss. On December 21, 2012, the single justice reserved and reported the case to the full court.

2. *Discussion.* a. *Relief under G. L. c. 211, § 3.* The Commonwealth contends that relief under G. L. c. 211, § 3, is unavailable to the defendant here because the denial of a motion to dismiss is an interlocutory ruling, and the defendant has failed to satisfy his burden to "demonstrate both a substantial claim of violation of his substantive rights and irremediable error, such that he cannot be placed in statu quo in the regular course of appeal." *Morrissette* v. *Commonwealth*, 380 Mass. 197, 198 (1980). It is true, as the Commonwealth asserts, that our power under G. L. c. 211, § 3, is to be used sparingly. See, e.g., *Burke* v. *Commonwealth*, 373 Mass. 157, 158 (1977). However, "[w]here the single justice has, in [her] discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported." *Martin* v. *Commonwealth*, 451 Mass. 113, 119 (2008). See *Commonwealth* v. *Goodwin*, 458 Mass. 11, 14-15 (2010); *Burke, supra* at 159. Accordingly, we consider the merits of this case.[6]

b. *Scope of § 105 (b).* General Laws c. 272, § 105 (§ 105),[7] begins with a brief definitional subsection, § 105 (*a*); has two

---

[6]The question whether § 105 (*b*) criminalizes photographing, videotaping, or electronically surveilling fully clothed individuals in public places is well briefed and likely to recur. See *Commonwealth* v. *Goodwin*, 458 Mass. 11, 15 n.4 (2010), citing *District Attorney for the Northwestern Dist.* v. *Eastern Hampshire Div. of the Dist. Court Dep't*, 452 Mass. 199, 203 n.9 (2008).

[7]Section 105 provides, in relevant part:

"(*a*) As used in this section, the following words shall have the following meanings unless the context clearly requires otherwise:

" 'Electronically surveils' or 'electronically surveilled', to view, obtain or record a person's visual image by the use or aid of a camera, cellular or other wireless communication device, computer, television or other electronic device.

" 'Partially nude', the exposure of the human genitals, buttocks, pubic area or female breast below a point immediately above the top of the areola.

"(*b*) Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such

separate provisions defining crimes, § 105 (*b*)-(*c*); and also has two exemption provisions, see § 105 (*d*)-(*e*).[8] Section 105 (*b*), at issue here, provides as follows:

> "Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished by imprisonment in the house of correction for not more than 2 1/2 years or by a fine of not more than $5,000, or by both such fine and imprisonment."

As its text indicates, § 105 (*b*) has five elements that the Commonwealth must prove: (1) the defendant willfully photographed, videotaped, or electronically surveilled;[9] (2) the subject was another person who was nude or partially nude; (3) the defend-

---

place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished by imprisonment in the house of correction for not more than 2 1/2 years or by a fine of not more than $5,000, or by both such fine and imprisonment.

"(*c*) Whoever willfully disseminates the visual image of another person who is nude or partially nude, with knowledge that such visual image was unlawfully obtained in violation of subsection (b) and without consent of the person so depicted, shall be punished by imprisonment in the house of correction for not more than 2 1/2 years or in the state prison for not more than 5 years or by a fine of not more than $10,000, or by both such fine and imprisonment.

"(*d*) This section shall not apply to a merchant that electronically surveils a customer changing room, provided that signage warning customers of the merchant's surveillance activity is conspicuously posted at all entrances and in the interior of any changing room electronically surveilled."

[8]There are three additional provisions of § 105. These specify which law enforcement officers can arrest without a warrant and when they can do so, see § 105 (*f*); and provide protection from public disclosure for photographs or other images obtained in violation of the section, see § 105 (*g*)-(*h*).

[9]While § 105 (*b*) prohibits photographing, videotaping, and electronically surveilling, the distinctions that exist among these three activities have no bearing on our analysis of § 105 (*b*) in this case. Accordingly, for ease of reference, we refer solely to photographing in this opinion.

ant did so with the intent to secretly conduct or hide his photographing activity; (4) the defendant conducted such activity when the other person was in a place and circumstance where the person would have a reasonable expectation of privacy in not being "so photographed"; and (5) the defendant did so without the other person's knowledge or consent.

At least for purposes of the motion to dismiss, the defendant does not contest that the conduct alleged by the Commonwealth in each complaint satisfies the first, third, and fifth of these elements — i.e., that (1) he attempted willfully to photograph a person with his cellular telephone camera; (3) he did so secretly with the intent to hide such conduct; and (5) he did so without the knowledge or consent of the person being photographed. He argues, however, that insofar as the Commonwealth's specific claim here is that his attempt was to photograph up the skirt of a clothed female passenger on the MBTA trolley, the charged conduct does not come within the scope of either the second or fourth element of the § 105 (*b*) offense because the female passenger was not "nude or partially nude," and also was not in a place where she had a reasonable expectation of privacy not to be "so photographed."[10] We turn to the two challenged elements.

i. *"Another person who is nude or partially nude."* Section 105 (*b*) focuses on a person who "willfully photographs, videotapes or electronically surveils *another person who is* nude or *partially nude*" (emphasis added).[11] In seeking to determine the meaning of this provision, we consider first the meaning of the actual language used by the Legislature. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983) ("the primary source of insight into the intent of the Legislature is the language of the statute"). Accord *Commonwealth* v. *Rahim*, 441 Mass. 273, 274 (2004).

Section 105 (*a*) defines "[p]artially nude" as "the exposure

---

[10]The defendant adds that if § 105 (*b*) can be interpreted to reach this form of conduct, then the statute constitutionally is infirm: it is either void for vagueness or overbroad. As explained *infra*, there is no need to reach the defendant's constitutional challenge in this case.

[11]Because of the nature of the Commonwealth's allegations in the two complaints before us, in our discussion of the second statutory element in this section, we focus primarily on the statutory language, "person who is . . . partially nude."

of the human genitals, buttocks, pubic area or female breast below a point immediately above the top of the areola." "Exposure" is not defined in the statute, but is generally defined as "an act of exposing," "a condition or instance of being laid bare or exposed to view." Webster's Third New International Dictionary 802 (2002). "Expose," in turn, means "to lay open to view; lay bare; make known," with "display" and "exhibit" noted as synonyms. *Id.* See American Heritage Dictionary of the English Language 626 (4th ed. 2006) (defining "expose" as "to make visible").[12] With these two definitions in mind, the defendant argues that "partially nude" refers to having one or more private parts of the body uncovered by any clothes and exposed or openly visible to another person's eyes; and that in proscribing the secret photographing of "a person who is . . . partially nude," the Legislature sought to protect against "Peeping Toms," that is, to punish secret photographing — by electronic means or otherwise — of such persons. The Commonwealth disagrees. It focuses on the definition of "exposure" or "expose" as "to cause to be visible or open to view," and appears to contend that the term "partially nude" includes the "exposure" "caused" by one person of an otherwise private part of another person's body through the creation of a photographic image; the fact that this other person was wearing some layer of clothing over that otherwise private body part is irrelevant. In essence, the Commonwealth reads § 105 (*b*) to apply to one who secretly photographs another person's partial nudity, whether the nudity is openly exposed and visible or only becomes exposed and visible by virtue of the photograph.

This interpretation of § 105 (*b*)'s language and reach is flawed. Contrary to the Commonwealth's view, § 105 (*b*) does not penalize the secret photographing of partial nudity, but of "a person who *is* . . . partially nude" (emphasis added). "Is" denotes a state of a person's being, not a visual image of the

---

[12]Section 105 was enacted in 2004. See St. 2004, c. 395, § 6. The dictionary definitions quoted in the text are taken from dictionaries that were published relatively close in time to the year in which the statute was enacted. See *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977) (when statute does not define words, court gives them "usual and accepted meanings" derived from dictionaries and other sources known to enacting legislators, so long as such meanings are consistent with statutory purpose).

person. Moreover, this person who is partially nude should be defined with reference to the other category of person included in the same sentence, namely, "a person who is nude." See 2A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:16, at 352-353 (7th ed. 2007) ("ordinarily the coupling of words denotes an intention that they should be understood in the same general sense"). See also *Commonwealth* v. *Brooks*, 366 Mass. 423, 428 (1974) ("words in a statute must be considered in light of the other words surrounding them"). Just as "a person who is nude" is commonly understood to mean a person who is not wearing any clothes,[13] so, in this context, we understand "a person who is . . . partially nude" to denote a person who is not wearing any clothes covering one or more of the parts of the body listed in the definition of that term, specifically, "the human genitals, buttocks, pubic area or female breast below a point immediately above the top of the areola." G. L. c. 272, § 105 (*a*).

In sum, we interpret the phrase, "a person who is . . . partially nude," in the same way that the defendant does, namely, to mean a person who is partially clothed but who has one or more of the private parts of body exposed in plain view at the time that the putative defendant secretly photographs her.[14] A female passenger on a MBTA trolley who is wearing a skirt, dress, or the like covering these parts of her body is not a person who is "partially nude," no matter what is or is not underneath the skirt by way of underwear or other clothing.[15]

---

[13]See Webster's Third New International Dictionary 1548 (2002) (defining "nude" as "naked"; "devoid of clothing"; "unclothed"). Accord Black's Law Dictionary 1170 (9th ed. 2009).

[14]Interpreting the term "exposure" in the statutory definition of "partially nude" to mean in plain view is consistent with how that term has been used in the context of other crimes included in G. L. c. 272. See *Commonwealth* v. *Blackmer*, 77 Mass. App. Ct. 474, 475-477, 479-480 (2010) (masturbation under defendant's clothing did not constitute exposure of body part necessary to sustain conviction for open and gross lewdness and lascivious behavior under G. L. c. 272, § 16). See also *Commonwealth* v. *Arthur*, 420 Mass. 535, 536-537, 541 (1995) (where defendant pulled his shorts or bathing suit down, enabling witnesses to observe his pubic hair but not his penis or genitalia, evidence was insufficient to convict defendant of indecent exposure in violation of G. L. c. 272, § 53, because exposure of pubic hair alone did not fit within scope of crime).

[15]Given that our interpretation of "exposure" requires that the intimate

ii. *"In such place and circumstance [where the person] would have a reasonable expectation of privacy in not being so photographed."* Our interpretation of § 105 (*b*)'s phrase, "a person who . . . is partially nude," essentially disposes of this case: as just indicated, under our interpretation, the two women the defendant is alleged to have attempted to secretly photograph on the MBTA were not "partially nude." However, we discuss briefly the fourth statutory element of the crime, namely, that the person being photographed "in such place and circumstance would have a reasonable expectation of privacy in not being so photographed." *Id.* The defendant argues that this language means that the person must be in a private place or a location where a person "would normally have privacy from uninvited observation." As such, because the MBTA is a public transit system operating in a public place and uses cameras, the two alleged victims here were not in a place and circumstance where they reasonably would or could have had an expectation of privacy. The Commonwealth argues that the defendant's proffered interpretation restricts § 105 (*b*)'s application to private places, and there is no such limiting language in the statute. It reads the statutory phrase, "reasonable expectation of privacy in not being *so photographed*" (emphasis added), as focusing less on the location where the photographing occurs than the location on the body that is the subject of that photograph. It argues that because a female MBTA passenger has a reasonable expectation of privacy in not having the area of her body underneath her skirt photographed, which she demonstrates by wearing the skirt, the defendant's conduct falls within § 105 (*b*).

We disagree with the Commonwealth's reading. The word "so" in the phrase, "so photographed," clearly is used referentially — that is, it serves to refer back to preceding language in the subsection addressing or describing the act of photographing. The preceding descriptive language in the section is the following: "Whoever willfully photographs . . . another person who is nude or partially nude, with the intent to secretly conduct or hide such activity . . . ." G. L. c. 272, § 105 (*b*).

---

areas be in plain view, contrary to the Commonwealth's contention, a photograph revealing intimate areas of the body not otherwise in plain view would not be sufficient for exposure.

See *Commonwealth* v. *Daley*, 463 Mass. 620, 624 (2012) (applying rules of grammar to interpret statute). Thus, it follows that the "so photographed" language in connection with the "place and circumstance" language requires that the person being photographed be in a state of complete ("nude") or partial ("partially nude") undress, and present in a place, private or not, where in the particular circumstances she would have a reasonable expectation of privacy in not being wilfully and secretly photographed while in that state.[16]

iii. *Conclusion.* For the reasons we have discussed, we conclude that § 105 (*b*), as written, as the defendant suggests, is concerned with proscribing "Peeping Tom" voyeurism of people who are completely or partially undressed and, in particular, such voyeurism enhanced by electronic devices. Section 105 (*b*) does not apply to photographing (or videotaping or electronically surveilling) persons who are fully clothed and, in particular, does not reach the type of upskirting that the defendant is charged with attempting to accomplish on the MBTA.

At the core of the Commonwealth's argument to the contrary is the proposition that a woman, and in particular a woman riding on a public trolley, has a reasonable expectation of privacy in not having a stranger secretly take photographs up her skirt. The proposition is eminently reasonable, but § 105 (*b*) in its current form does not address it.[17]

c. *Constitutional challenges to § 105 (b).* The defendant

---

[16]We find support for this reading of the "place and circumstance" provision in § 105 (*b*) in a later subsection, § 105 (*d*). See *Commonwealth* v. *Williamson*, 462 Mass. 676, 681 (2012) ("When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into other parts of the statute" [citation omitted]). See also *Commonwealth* v. *Palmer*, 464 Mass. 773, 777 (2013) (statutes should be read as whole). Section 105 (*d*) provides that § 105 "shall not apply" to merchants who electronically surveil customers in changing rooms so long as warning signage is conspicuously posted. This express exemption reinforces the conclusion that the Legislature intended § 105 (*b*)'s "place and circumstance" requirement to refer to a physical location and also intended that the person being photographed be in a state of some level of undress.

[17]Other States, recognizing that women have such an expectation of privacy, have enacted provisions specifically criminalizing the type of upskirting the defendant is alleged to have attempted. See, e.g., Fla. Stat. § 810.145(2)(c) (2013) ("A person commits the offense of video voyeurism if that person . . . [f]or the amusement, entertainment, sexual arousal, gratification, or profit of

argues that if § 105 (*b*) criminalizes the act of photographing a fully clothed woman under her skirt while she is in a public place, it is both unconstitutionally vague and overbroad. Where "a particular construction of a statute is the premise of a constitutional claim, [the court] must resolve any issues of statutory interpretation . . . prior to reaching any constitutional issue." *Commonwealth* v. *Suave*, 460 Mass. 582, 586-587 (2011), quoting *Santos, petitioner*, 78 Mass. App. Ct. 280, 284 (2010). Because we have concluded that § 105 (*b*) does not criminalize the defendant's alleged conduct, we need not reach the constitutional questions he raises. See, e.g., *Suave, supra* at 589; *Commonwealth* v. *Raposo*, 453 Mass. 739, 743 (2009).

> *Order denying motion to dismiss*
> *reversed.*

.

oneself or another, or on behalf of oneself or another, intentionally uses an imaging device to secretly view, broadcast, or record under or through the clothing being worn by another person, without that person's knowledge and consent, for the purpose of viewing the body of, or the undergarment worn by, that person"); N.Y. Penal Law § 250.45(4) (McKinney 2008) ("A person is guilty of unlawful surveillance in the second degree when . . . [w]ithout the knowledge or consent of a person, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record, under the clothing being worn by such person, the sexual or other intimate parts of such person").

We note, without analysis of them, that in the past legislative session, proposed amendments to § 105 were before the Legislature that appeared to attempt to address the upskirting conduct at issue here. See 2013 Senate Doc. No. 648; 2013 House Doc. No. 1231.