CYPHER, J.
**563 The defendant, Sam C. Wassilie, was convicted on ten indictments charging him with secretly videotaping, with his cellular telephone (cell phone), unsuspecting individual adults who were nude or partially nude, in violation of G. L. c. 272, § 105(b ), first par. (paragraph one).[1] He also was convicted on five indictments charging violation of G. L. c. 272, § 105(b ), third par. (paragraph three), for secretly videotaping children during the same incident.
The parties cross-appealed. The defendant argues that the judge erred when he upheld the defendant's convictions under paragraph one of the statute, ruling that the proper unit of prosecution was the individual victim rather than the episodes of videotaping. The Commonwealth challenges the judge's posttrial decision declaring that paragraph three of the statute was unconstitutionally vague and vacating the defendant's convictions of videotaping the children.
We conclude that the proper unit of prosecution under § 105(b ), first par., is based on the individual victims. We also conclude that § 105(b ), third par., is not unconstitutionally vague. However, because *686 the judge did not include certain language from paragraph three in the instruction to the jury on the charges of videotaping the children, we remand three of the five indictments for a new trial.
1. Background. We briefly recite the facts that the jury could have found at trial. The defendant was arrested in New York for using his cell phone to record people secretly in a public bathroom in New York. New York authorities secured a search warrant and discovered two recordings on the defendant's laptop, each approximately twenty minutes long that showed individuals using a different bathroom. After some investigation, police deduced that the bathroom was located in Massachusetts at a recreational complex in Dalton.[2]
At trial, the evidence showed that the bathroom was a unisex, one room bathroom, without any stalls. A Dalton police officer testified that the bathroom was "just a toilet, a sink, paper towels ... [it was] an open bathroom." At the beginning of each of the recordings, the defendant is shown starting the recording, **564 concealing the cell phone by wrapping it in paper towels, and then placing it across from the toilet on the floor. According to the officer, the defendant "set up [the cell phone] directly across from the toilet so you would have a clear view of the toilet." In the first video, the defendant reentered the bathroom after approximately twenty minutes, adjusted the angle of the cell phone to a lower view, and restarted the recording. The police officer agreed that the angle of the recording device was positioned to capture images of "the parts of the body under [a person's] clothing." Both videos depict genitalia of children and adults, male and female. One segment of the recording captures an image under the skirt of a female child in a cheerleading outfit. The recordings showed seventeen adults and five juveniles, not all identifiable, nude or partially nude, using the bathroom.
2. Procedural history. The defendant was indicted on twenty-two counts of violating § 105(b ).[3] The jury convicted the defendant on a total of fifteen indictments charging a violation of § 105(b ) : ten charging a violation of paragraph one, and five charging a violation of paragraph three. After trial, the defendant filed a motion to vacate the judgments on all indictments but one under paragraph one and to sentence him only on that one indictment. He argued that the correct unit of prosecution was the episode of videotaping, not each individual victim who appeared in the recordings. In denying that motion, the judge concluded that the proper unit of prosecution under paragraph one was based on the individual victims. The defendant also filed a motion for a required finding of not guilty on the five indictments charging a violation of paragraph three. In that motion, he argued that the "upskirting language" in paragraph three, forbidding surveillance "under or around" a "child's clothing," was unconstitutionally vague and ambiguous. After a hearing, the *687 judge allowed that motion, concluding that the upskirting language in paragraph three made the statute unconstitutionally vague. He dismissed the five **565 indictments with prejudice.
3. Standard of review. We review the judge's decisions on the defendant's postconviction motions for an abuse of discretion. See Commonwealth v. Grassie, 476 Mass. 202, 214-215, 65 N.E.3d 1199 (2017), S.C., 482 Mass. 1017, 121 N.E.3d 1290 (2019). We review any question of statutory interpretation de novo. Commonwealth v. Wade, 475 Mass. 54, 60, 55 N.E.3d 409 (2016).
4. Discussion. a. Statutory history. For context, we discuss the history of § 105(b ). In its original version, § 105(b ) consisted of a sole paragraph that punished general "Peeping Tom" voyeurism. See Commonwealth v. Robertson, 467 Mass. 371, 380, 5 N.E.3d 522 (2014) ; St. 2008, c. 451, § 149. At the time, § 105(b) stated:
"Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished by imprisonment in the house of correction for not more than 2 ½ years or by a fine of not more than $5,000, or by both such fine and imprisonment."
In Robertson, 467 Mass. at 372-373, 5 N.E.3d 522, the defendant was charged under § 105(b ) for videotaping surreptitiously the clothed crotch areas of women seated across from him on the Massachusetts Bay Transportation Authority (MBTA) trolley. We reversed the denial of the defendant's motion to dismiss and concluded that § 105(b ) did not apply to photographing (or videotaping or electronically surveilling) persons who are fully clothed and, in particular, did not reach the type of upskirting that the defendant was charged with attempting to accomplish on the MBTA. Id. at 380, 5 N.E.3d 522.
In response to our decision in Robertson, the Legislature immediately amended § 105(b ) to insert two additional paragraphs to address the type of conduct that occurred in Robertson -- "namely, the surreptitious photographing or videotaping of a person's clothed private anatomy even when in public." Commonwealth v. Nascimento, 91 Mass. App. Ct. 665, 666, 79 N.E.3d 1075 (2017). See St. 2014, c. 43, § 2. Paragraph three, which is the paragraph at issue in this case, states:
"Whoever willfully photographs, videotapes or electronically surveils, with the intent to secretly conduct or hide such activity, **566 the sexual or other intimate parts of a child under the age of [eighteen] under or around the child's clothing to view or attempt to view the child's sexual or other intimate parts when a reasonable person would believe that the person's sexual or other intimate parts would not be visible to the public shall be punished ...." G. L. c. 272, § 105(b ), third par.
At the same time, the Legislature also inserted a definition of "sexual or other intimate parts" as "human genitals, buttocks, pubic area or female breast below a point immediately above the tip of the areola, whether naked or covered by clothing or undergarments" (emphasis added). G. L. c. 272, § 105(a ), as amended by St. 2014, c. 43, § 1.
After § 105(b ) had been amended, the Appeals Court considered whether the amended version of § 105(b ) protected individuals in public places.
*688 Nascimento, 91 Mass. App. Ct. at 665, 79 N.E.3d 1075. The defendant in that case was convicted under paragraph three of secretly videotaping two teenage girls under their dresses while they were traveling on a public ferry. Id. The Appeals Court reasoned that an individual does not lose all reasonable expectations of privacy in their covered sexual or intimate parts simply by being in public, and thus held that the amended statute applies "when a reasonable person would believe that the person's sexual or other intimate parts would not be visible to the public." Id. at 667, 79 N.E.3d 1075.
b. Unit of prosecution under G. L. c. 272, § 105( b ).[4] "[A] unit of prosecution is a criminal act or course of conduct punishable at law." Commonwealth v. Dykens, 473 Mass. 635, 640 n.4, 45 N.E.3d 580 (2016). In his decision on the defendant's motion, the judge concluded that the proper unit of prosecution in paragraph one was based on the number of victims. In doing so, the judge distinguished this case from Commonwealth v. Rollins, 470 Mass. 66, 67, 18 N.E.3d 670 (2014), where we concluded that under the structure of the statute, G. L. c. 272, § 29C, the appropriate unit of prosecution for possession of child pornography was not each photograph in a large, "single cache" of photographs, but the collection as a whole.
The defendant contends that the judge erred and that the correct unit of prosecution is the episode of recording, rather than the **567 number of victims whose privacy was violated by the recording. He argues that if each victim was a unit of prosecution it would lead to an unreasonable result and violate the double jeopardy clause of the Fifth Amendment to the United States Constitution as well as Massachusetts common law.
The double jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law preclude the imposition of multiple punishments for the commission of a single crime. Rollins, 470 Mass. at 70, 18 N.E.3d 670. We have defined "multiple punishments" as "those in excess of what a Legislature intended to be the punishment for a particular offense" (quotation and citation omitted). Id. Therefore, where, as here, the defendant is convicted multiple times under the same statute, we ask what the "unit of prosecution" is that "the Legislature intended as the punishable act for violations" of § 105(b ). Dykens, 473 Mass. at 640, 45 N.E.3d 580 ; Commonwealth v. Horne, 466 Mass. 440, 449-450, 995 N.E.2d 773 (2013).
In order to "determine the appropriate 'unit of prosecution', we 'look to the language and purpose of the statute[ ], to see whether [it] speak[s] directly to the issue of the appropriate unit of prosecution.' " Commonwealth v. Traylor, 472 Mass. 260, 268, 34 N.E.3d 276 (2015), quoting Commonwealth v. Botev, 79 Mass. App. Ct. 281, 286, 945 N.E.2d 956 (2011). If it does not, then we proceed to identify that unit, while cognizant that any ambiguity that arises in the process must be resolved against turning a single transaction into multiple offenses. Dykens, 473 Mass. at 640, 45 N.E.3d 580. Where a single statute is involved, we must decide "whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense" (citation omitted). Traylor, supra.
*689 In deciding whether certain conduct constitutes a single offense or multiple offenses, we "do not simply count the number of discrete acts." Freundel v. United States, 146 A.3d 375, 379 (D.C. 2016). See generally, Traylor, 472 Mass. at 268-269, 34 N.E.3d 276. Put another way, "there is no [categorical] rule that a single act can support only a single conviction; multiple punishments are permissible even where multiple charges are the product of a single act." Freundel, supra.
Instead, our case law has established two broad categories of statutes. Traylor, 472 Mass. at 268, 34 N.E.3d 276. One category is focused upon the prevention of violence or physical injury to others. Id. In this category, we have held that " '[w]henever a single criminal transaction gives rise to crimes of violence which are committed against several victims, then multiple indictments (and punishments)'
**568 for the crime against each victim 'are appropriate.' " Id. quoting Commonwealth v. Donovan, 395 Mass. 20, 31, 478 N.E.2d 727 (1985). Thus, for example, multiple convictions have been upheld where a single shot killed a woman and her fetus; a robber took money from two employees; and two deaths resulted from motor vehicle accident. See Traylor, supra, collecting cases.
The other category of statutes is directed at "punishing the defendant for conduct offensive to society, as distinct from punishing the defendant for the effect of that conduct on particular victims" (citation omitted). Id. at 268-269, 34 N.E.3d 276. An example of this category are statutes criminalizing possession of child pornography. See. e.g., Rollins, 470 Mass. at 73, 18 N.E.3d 670. In Rollins, we concluded that the appropriate unit of prosecution for possessing child pornography was not each photograph in a large single cache of photographs but, rather, the collection as a whole. Id. at 67, 18 N.E.3d 670. "Accordingly, we reject[ed] the Commonwealth's victim-based approach to determining the appropriate unit of prosecution for possession of child pornography, concluding instead that a conduct-based approach [was] more in keeping with the broad intent of the statute and the tiered punishment framework that it erect[ed]." Id. at 73, 18 N.E.3d 670.
However, there are certainly other crimes that do not fit squarely within either broad category. For example, in Commonwealth v. Casbohm, 94 Mass. App. Ct. 613, 618, 116 N.E.3d 633 (2018), the Appeals Court distinguished the crime of posing a child for the production of pornography, G. L. c. 272, § 29A(a ) and (b ), from the crime of possession of child pornography that we held was conduct offensive to society in Rollins. The Appeals Court concluded that the unit of prosecution for posing a child for the production of child pornography punishes behavior that victimizes a specific person, even though the statute itself was not focused on the prevention of physical injury. Casbohm, supra. See generally Dykens, 473 Mass. at 637 & n.1, 641, 45 N.E.3d 580 (three attempts to burglarize same residence on or about same date not duplicative because unit of prosecution for attempted burglary is any act toward commission of substantive crimes).
With this framework in place, we first look to what unit of prosecution the Legislature intended in § 105(b ). Although the defendant focuses his argument on paragraph one, we consider the unit of prosecution for the entire statute. See note 4, supra. Like the Casbohm case, the conduct in this case does not fit squarely within one of the two broad categories described in the Traylor case, and we conclude that the Legislature intended the proper unit of prosecution to be based on the number of victims.
**569 *690 The defendant argues that the plain language of the statute punishes the physical act of recording. Paragraph one states in part:
"Whoever willfully photographs, videotapes or electronically surveils another person who is nude or partially nude, with the intent to secretly conduct or hide such activity, when the other person in such place and circumstance would have a reasonable expectation of privacy in not being so photographed, videotaped or electronically surveilled, and without that person's knowledge and consent, shall be punished ...."
Paragraph one addresses the conduct that affects a single person: "another person"; "other person"; "that person." Similarly, the second and third paragraphs, which were added to the statute following Robertson, also address conduct toward an individual person. Paragraph three states:
"Whoever willfully photographs, videotapes or electronically surveils, with the intent to secretly conduct or hide such activity, the sexual or other intimate parts of a child under the age of [eighteen] under or around the child's clothing to view or attempt to view the child's sexual or other intimate parts when a reasonable person would believe that the person's sexual or other intimate parts would not be visible to the public shall be punished ...."[5]
Although not dispositive, the statute's singular language and reference, first and foremost, to "another person," "a person," or "a child" indicates that the aim of the Legislature was to protect individual adults and children from having their privacy violated. Cf. Rollins, 470 Mass. at 71, 18 N.E.3d 670.
Furthermore, when § 105(b ) is read as a whole, the language of the statute conveys the legislative purpose to protect individual privacy, adding weight to our conclusion that the correct unit of prosecution is the victim, not the conduct. The first paragraph's language addresses whether the victim is clothed or unclothed; whether the individual would have a reasonable expectation of privacy; and whether the individual has consented to the conduct. The second and third paragraphs address whether the recording is focused on the individual's sexual or intimate parts and whether **570 a reasonable person would believe that an individual's sexual or intimate parts would not be visible to the public. The statute's focus is on the nature of the violation of an individual's privacy. Criminalizing the photographing, videotaping, or electronic surveillance of the victim effectuates the statute's purpose -- to protect the victim's privacy and to penalize the invasion of that privacy.
The legislative history of § 105(b ) reinforces the plain meaning of the statute's language. In amending § 105(b ), the Legislature stated in the preamble that statute's purpose was to "strengthen forthwith the laws relative to the expectation of privacy of one's person." Preamble, St. 2014, c. 43. See Flanagan, 76 Mass. App. Ct. at 461, 923 N.E.2d 101 ("We presume that when the Legislature enacts a statute it is aware of the prior state of the law as explicated by the decisions of the court" [citation omitted] ).
The defendant's arguments analogizing this case to the Rollins case are unpersuasive. In Rollins, we found the language of the statute ambiguous as to the unit of prosecution and so looked primarily to legislative history to determine the correct *691 unit. Rollins, 470 Mass. at 71-72, 18 N.E.3d 670. Citing the historical and statutory notes to the enactment of the possession of child pornography statute, G. L. c. 272, § 29C, we noted that the Legislature intended to protect the welfare of children and society as a whole, and thus the statute was intended to punish conduct offensive to society, rather than to individual victims. Id. at 72-73, 18 N.E.3d 670, discussing St. 1997, c. 181, § 1 (6). In contrast, regarding § 105(b ), the Legislature clearly intended to "strengthen forthwith the laws relative to the expectation of privacy of one's person." Preamble, St. 2014, c. 43.
The Court of Appeals of Washington has addressed the unit of prosecution question in a "Peeping Tom" statute similar to § 105(b ). In State v. Diaz-Flores, 148 Wash. App. 911, 917, 201 P.3d 1073 (2009), the defendant was convicted of two counts under the State's voyeurism statute for secretly viewing two people having sexual intercourse. As with our Legislature's response to the Robertson decision, the Washington voyeurism statute also was amended following a decision of the Washington Supreme Court that held that the language of the statute did not reach unlawful upskirting photography. See State v. Glas, 147 Wash. 2d 410, 414, 54 P.3d 147 (2002). The Washington Legislature amended the statute to focus on the victim's reasonable expectation of privacy **571 regardless of whether the victim was in a public or private place. Relying on the words "another person" in the statute, the court concluded that the proper unit of prosecution was each person whose privacy was violated, "not just the course of conduct." Diaz-Flores, supra at 917-918, 201 P.3d 1073. See also Freundel, 146 A.3d at 381-382 (relying in part on statute's use of "an individual" and "the individual" to conclude unit of prosecution of voyeurism statute was each victim).
The defendant's arguments analogizing this case to Commonwealth v. Donovan, 395 Mass. 20, 478 N.E.2d 727 (1985), does not compel a different result. In Donovan, we held that the defendants' conduct of creating a fake night deposit box outside a bank constituted one charge of larceny, for a single larcenous scheme, not seven charges for each individual who deposited money into the fake box. Id. at 21, 478 N.E.2d 727. The court in Donovan, however, limited its holding to the crime of larceny and there is no reason to extend that holding to this case where it is clear that the Legislature has intended to protect each victim.
Under the defendant's interpretation of § 105(b ), once he unlawfully recorded one victim, all future voyeuristic recording, even of different victims with different recordings and at different times, would not be separately punishable as long as the recordings were part of a single endeavor. This interpretation would yield an absurd result for multiple reasons. See Ciani v. MacGrath, 481 Mass. 174, 178, 114 N.E.3d 52 (2019). The first paragraph of § 105(b ) punishes anyone who willfully photographs, videotapes, or electronically surveils another person who is nude or partially nude. What if, instead of creating two recordings totaling roughly forty minutes of footage depicting twenty individuals, the defendant hid in a locker room and took twenty still pictures of different individuals over the course of forty minutes? We would be hard pressed to interpret that conduct as a single endeavor. A violation of the statute, whether it be by a continuous recording of multiple victims or still images of multiple victims, should be treated the same. That the defendant only made two video recordings does not save him from prosecution for the numerous victims that he captured. See Freundel, 146 A.3d at 380-384 (unit of prosecution *692 rested on separate victims under District of Columbia voyeurism statute where defendant videotaped fifty-two women with hidden video cameras in rooms where they undressed).
The defendant also advances several other unpersuasive arguments. The defendant argues that because the statute is placed in **572 G. L. c. 272, prohibiting "Crimes against Chastity, Morality, Decency, and Good Order," such placement is indicative of the Legislature's intent to punish conduct offensive to society, not to an individual victim. He also argues that § 105(b ) does not denote a crime of violence and, so, the unit of prosecution should be the conduct not the victim. See Traylor, 472 Mass. at 268, 34 N.E.3d 276 (" 'whenever a single criminal transaction gives rise to crimes of violence which are committed against several victims, then multiple indictments [and punishments]' for the crime against each victim 'are appropriate' " [citation omitted] ). As discussed supra, the specific language of the statute, with its focus on separate individuals (who, if they are adults, must give consent to be surveilled), shows that the intent of § 105(b ) is to protect individual privacy.
Finally, the defendant invokes the rule of lenity, which operates to preclude multiple convictions under the same statute that are based on the same act if it is unclear whether the Legislature intended to impose multiple punishments. Dykens, 473 Mass. at 640, 45 N.E.3d 580. Because we do not conclude that the statute is ambiguous as to the unit of prosecution, the rule of lenity does not apply.
b. "Upskirting" language in G. L. c. 272, § 105( b ) , third par. During the charge conference at the defendant's trial, the judge declined to adopt the defendant's or the Commonwealth's proposed jury instructions. The judge stated that he had decided to "reengineer[ ] the statute to fit what [he] believe[d] [was] common sense." In doing so, he redacted what he called the "upskirting" language of paragraph three in the jury charge, i.e., language that forbids surveillance "under and around the child's clothing" because, as he stated in his written decision on the defendant's motion for a required finding of not guilty, "there simply was no upskirting conduct in this case; there were no clothes pushed aside nor was the camera skillfully placed to view under the clothes."[6]
The Commonwealth argues that the judge erred when he allowed the defendant's postconviction motion for a required finding of not guilty and concluded that paragraph three was unconstitutionally vague because he did "not know how to integrate the **573 upskirting language into the statute so that the elements of the crime [were] reasonably apparent." In addition, the Commonwealth contends that the judge improperly decided the motion because there was sufficient evidence of the crime, as instructed, for the jury to reasonably find the essential elements of paragraph three. The defendant argues that any ambiguity in paragraph three must be resolved in his favor under the rule of lenity. Moreover, he contends that the motion for a required finding of not guilty was properly decided because the plain language and history of paragraph three refers to "upskirting" and, because there was no evidence of that action, there was insufficient evidence to convict. We conclude that paragraph three is not unconstitutionally vague. *693 i. Interpretation of phrase "under and around" in G. L. c. 272, § 105( b ) , third par. "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Sullivan v. Brookline, 435 Mass. 353, 360, 758 N.E.2d 110 (2001). "[W]here the language of a statute is plain and unambiguous, it is conclusive as to the legislative intent" (citation omitted). Sharris v. Commonwealth, 480 Mass. 586, 594, 106 N.E.3d 661 (2018). "That said, we will not adopt a literal construction of a statute if the consequences of doing so are 'absurd or unreasonable,' such that it could not be what the Legislature intended." Ciani, 481 Mass. at 178, 114 N.E.3d 52. "Where the draftsmanship of a statute is faulty or lacks precision, it is our duty to give [it] a reasonable construction" (citation omitted). Capone v. Zoning Bd. of Appeals of Fitchburg, 389 Mass. 617, 622, 451 N.E.2d 1141 (1983). Where "the statutory language [could] plausibly be found to be ambiguous, the rule of lenity requires the defendant be given the benefit of the ambiguity" (citation omitted). Commonwealth v. Mattier (No. 2), 474 Mass. 261, 267, 50 N.E.3d 157 (2016). However, our principal objective is to ascertain and effectuate the intent of the Legislature in a way that is consonant with sound reason and common sense. Commonwealth v. Curran, 478 Mass. 630, 633-634, 88 N.E.3d 862 (2018).
As discussed supra, by amending § 105(b ) as it did, the Legislature aimed to encompass the upskirting conduct of the defendant in Robertson, 470 Mass. at 371-372, 22 N.E.3d 897, that the initial statute did not address. See Sullivan, 435 Mass. at 360, 758 N.E.2d 110. The Legislature also amended the statute to define the phrase "sexual or other intimate parts" that are protected under the amended statute as including "whether naked or covered by clothing or **574 undergarments." G. L. c. 272, § 105(a ), (b ), inserted by St. 2014, c. 43, §§ 1, 2. We interpret that language to mean that if someone positions a camera in a way that views or attempts to view "under or around" a child's clothing, that person can be convicted of the offense even if clothing or undergarments protect a view of the child's "sexual or other intimate parts."
We conclude that the judge erred when he interpreted the statute to mean that "if the defendant only attempts to view under or around a child's clothing, it would by definition exclude the requirement that he was successful in electronically surveil[ling] the sexual or other intimate parts of a child." Compounding that error, the judge redacted the phrase "under or around" from the jury instructions in an attempt to "reconcile the language in the statute."
The phrase "under or around" is not defined by § 105(a ) ; however, applying the familiar rule of statutory construction that instructs us to give the words their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose, there is nothing to reconcile in the statute. Commonwealth v. St. Louis, 473 Mass. 350, 357, 42 N.E.3d 601 (2015).
"Around" means "to avoid or get past: on or to another side of." Merriam-Webster's Collegiate Dictionary 68 (11th ed. 2007). "Under" means "in or into a position below or beneath something." Id. at 1363. We interpret the language "under or around" to mean that a recording device was placed in a way that the photographs or recordings showed images below or beneath the child's clothing or on the "other," or under, side of the child's clothing -- a view that would otherwise not be visible *694 but for the focus or angle of the recording device. Using the plain meaning of the words "under and around" accomplishes the Legislature's intent.
Although upskirting generally refers to the practice of taking unwanted pictures up a woman's skirt or dress, see Robertson, 467 Mass. at 371 n.1, 5 N.E.3d 522, paragraph three does not use that phrase. Thus, the phrase "under or around" could include images up a child's skirt or shorts, down a child's blouse, or up a shirt, as well as any camera angle that could give a view of a child's sexual or other intimate parts that would otherwise not be readily visible. The recording device may be stationary, as it was here, aimed in such a way as to gain a view of private parts of the body even though a person is clothed. The recording device also may be manipulated to achieve a certain focus under or around a layer of **575 clothing. Indeed, that is similar conduct to what occurred in Robertson, supra at 372, 5" url="https://cite.case.law/citations/?q=5%20N.E.3d%20522">5 N.E.3d 522, and in Nascimento, 91 Mass. App. Ct. at 665, 79 N.E.3d 1075. This interpretation of the language "under or around" is consonant with sound reason, common sense, and the aim of the Legislature in response to Robertson. See Curran, 478 Mass. at 633-634, 88 N.E.3d 862.
Contrary to the defendant's contention, our interpretation of paragraph three does not render paragraph one superfluous. Much of the two recordings in question constitutes conduct that falls squarely within paragraph one, but not paragraph three. Several of the children depicted in the video are partially naked while using the bathroom without cover of their intimate parts. Although their sexual parts are visible, the low camera angle does not portray a view under or around clothing. Conversely, several children are clothed and, because of the recording device angle, the recording depicts footage up a child's dress and below two children's shirts. Thus, in cases where a child is recorded nude or partially nude with their sexual or intimate parts readily exposed it cannot be said that recording was taken under or around a layer of clothing. That conduct would strictly be an offense under paragraph one. However, in cases where the camera is placed in such a position to view under or around a child's clothing to view the child's intimate parts, that conduct falls squarely within paragraph three.
Perhaps the facts of this case contributed to the confusion surrounding the application of paragraph three. For example, if the recording device had been positioned in the same manner, perhaps concealed by books or newspapers in a library or a classroom, there is no question that if the camera captured images of someone's sexual or intimate parts up a dress, down a blouse, or around a tank top, that conduct would be an offense under paragraph three. Because the camera is in a bathroom and captures partially naked individuals, it is hard to recognize immediately that this conduct can fall within paragraph three. During the charge conference, the confusion between the parties and the judge affected the judge's decision on how to charge the jury. The fact that the parties and the judge disagreed on the proper construction of paragraph three, however, does not necessarily establish an ambiguity. See Home Ins. Co. v. Liberty Mut. Fire Ins. Co., 444 Mass. 599, 602, 830 N.E.2d 186 (2005).
One might think that the secret recording of a naked child -- conduct falling within the scope of paragraph one -- should be **576 punished more severely than the secret recording of a child under or around their clothing -- conduct falling within the scope of paragraph three. In the wake of Robertson, whether by design or inadvertence, the Legislature did not amend paragraph one to provide for a greater sentence *695 enhancement for the recording of children in the nude. The question of how defendants are to be sentenced under § 105(b ) is for the Legislature to decide, not the court.
In sum, we conclude that paragraph three of § 105(b ) is constitutional. "Criminal statutes must be sufficiently specific so as to give fair notice as to what conduct is forbidden." Commonwealth v. Adams, 389 Mass. 265, 270, 450 N.E.2d 149 (1983). A statute lacks the required specificity where a person of average intelligence must necessarily guess at its meaning. Commonwealth v. Crawford, 430 Mass. 683, 689, 722 N.E.2d 960 (2000). However, unspecific statutory language "may nonetheless be sufficiently definite because of judicial construction, common law meaning, or the statutory history of particular terms' ... and such a statute may be rendered 'constitutionally definite by giving it a reasonable construction' " (citations omitted). Commonwealth v. Quinn, 439 Mass. 492, 499-500, 789 N.E.2d 138 (2003). In this case, based on the history of § 105(b ), the aim of the Legislature following our decision in Robertson, and the plain meaning of the language "under or around," we conclude that a person of average intelligence would comprehend what conduct the statute prohibits. See St. Louis, 473 Mass. at 356, 42 N.E.3d 601.
ii. Sufficiency of the evidence. The Commonwealth contends that there was sufficient evidence of the crime, as instructed, for the jury reasonably to find the essential elements of paragraph three on all five indictments. Although the evidence was sufficient for three indictments under paragraph three, the jury instruction was incorrect; therefore, a retrial is required on three indictments.
At trial, the evidence showed that the defendant's cell phone was placed on the ground "directly across from the toilet so [there was] a clear view of the toilet." After the first twenty minutes of recording, the defendant reentered the bathroom to manipulate the camera to a lower angle, seemingly to get a better view of the individuals preparing to use and using the toilet. A police officer testified that the angle of the cell phone was positioned to capture the parts of the body under a person's clothing. Moreover, at one point in the recording, the camera view is focused up a young girl's cheerleading skirt. On two other occasions, the camera **577 view shows the private parts of two young girls, under their shirts, while they are sitting on the toilet.
When instructing the jury on the indictments under paragraph three, the judge redacted the "under and around" language. He instructed:
"In order to prove the defendant's guilt of this crime, the Commonwealth must prove the following four elements to you beyond a reasonable doubt. First element, that the defendant willfully photographed, videotaped, or electronically surveilled. Second element, the sexual or other intimate parts of a child under the age of 18. Third element, that the defendant did so with the intent to secretly conduct or hide his photographing activities. And the fourth element, that the defendant conducted such activities when a reasonable person would believe that the person's sexual or other intimate parts would not be visible to the public."
We conclude that the language "under or around" is an essential element of the offense under paragraph three.[7] We further *696 conclude that, if properly instructed, there is sufficient evidence for a jury to find the defendant guilty of three of the indictments under paragraph three: one against the young girl in the cheerleading skirt, indictment no. 2015-078-20, and one each against the two young girls sitting on the toilet whose intimate parts are visible under their shirts, indictment nos. 2015-078-19 and 2015-078-21. Therefore, we reverse the judge's order vacating the five indictments under paragraph three and remand three indictments, as explained supra, under paragraph three for a new trial where the jury can be properly instructed on the elements of the offense. An explanation of the elements of the crime, as set forth in note 7, supra, should suffice to explain the crime to the jury.
As to the other two indictments under paragraph three, indictment nos. 2015-078-18 and 2015-078-22, viewing the evidence in the light most favorable to the Commonwealth, there is insufficient evidence for a rational trier of fact to find all of the elements beyond a reasonable doubt.
**578 Commonwealth v. Latimore, 378 Mass. 671, 677, 393 N.E.2d 370 (1979). Although the recordings of these two victims might establish the elements of paragraph one, they do not depict the children's intimate parts under or around an article of clothing. In particular, regarding indictment no. 2015-078-18, the view of the child's intimate part was obvious and not dependent on the focus or the angle of the recording device.
5. Conclusion. The order denying the defendant's postconviction motion to be sentenced on one indictment under G. L. c. 272, § 105(b ), first par., is affirmed. The order vacating the defendant's convictions on the five indictments under G. L. c. 272, § 105(b ), third par., is reversed and remanded for a new trial on the three indictments identified supra. The two other indictments under that paragraph are dismissed without prejudice.
So ordered.

The defendant was indicted on a total of twenty-two counts under G. L. c. 272, § 105(b ) (§ 105 [b ] ). The Commonwealth filed a nolle prosequi as to seven of the indictments because some victims in the recording could not be identified.

The videos were recorded over the course of one day during a youth football game.

Prior to the start of trial, the defendant filed a motion to dismiss, which, after the judge denied the motion, the defendant appealed to a single justice of the county court. The defendant argued that § 105(b ) did not allow for separate prosecutions as to each individual videotaped, and thus the charges were duplicative and violated the double jeopardy clause. The single justice denied the appeal, which we affirmed, noting that because the defendant had not yet been convicted, no double jeopardy issues were present. See Wassilie v. Commonwealth, 477 Mass. 1033, 1033-1034, 80 N.E.3d 333 (2017).
At the start of his jury trial, the defendant again filed a motion to dismiss, which was denied.

The defendant raises the unit of prosecution argument specifically in context of the first paragraph of § 105(b ). Because we conclude that the third paragraph of § 105(b ) is not unconstitutionally vague, we address the unit of prosecution argument regarding the entirety of § 105(b ).

The second paragraph of § 105(b ) has identical language to the third paragraph, but replaces reference to a "child" with a "person." G. L. c. 272, § 105(b ), second par.

We have reviewed the two videos in their entirety. We give no deference to the judge's findings in his postverdict memorandum regarding the contents of the videos. We stand in the same position as the judge, and reach our own conclusion unaffected by his findings. Commonwealth v. Santana, 477 Mass. 610, 616, 82 N.E.3d 986 (2017).

The elements of the offense are: (1) the defendant willfully photographed, videotaped or electronically surveilled, (2) with the intent to secretly conduct or hide his photographing activity, (3) the intimate parts of a child, (4) under or around the child's clothing to view or attempt to view the child's intimate parts, (5) when a reasonable person would believe that person's intimate parts would not be visible to the public.